## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:12-cv-20271-RNS-TEB

| | |
|---|---|
| MOTOROLA MOBILITY, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>    Defendant. | **JURY TRIAL DEMANDED** |
| APPLE INC.,<br><br>    Counterclaim Plaintiff,<br><br>v.<br><br>MOTOROLA MOBILITY, INC.,<br>HTC CORPORATION,<br>HTC AMERICA, INC.,<br>ONE & COMPANY DESIGN, INC., and<br>HTC AMERICA INNOVATION INC.<br><br>    Counterclaim Defendants. | |

### DEFENDANT APPLE INC.'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF MOTOROLA MOBILITY, INC.'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Defendant Apple Inc. ("Apple") by and through its undersigned counsel, hereby responds to Motorola Mobility, Inc.'s ("Motorola Mobility") Original Complaint for Patent Infringement ("Complaint") as follows:

### I.  ANSWER

### INTRODUCTION

1.      Apple admits that Motorola Mobility's Complaint alleges that Apple infringes U.S. Patents Nos. 5,710,987 ("the '987 patent"), 5,754,119 ("the '119 patent"), 5,958,006 ("the

'006 patent"), 6,008,737 ("the '737 patent"), 6,101,531 ("the '531 patent") and 6,377,161 ("the '161 patent") (collectively, "the Asserted Patents"), and that Motorola Mobility seeks remedies for Apple's alleged infringement.  Apple denies infringing any of the Asserted Patents.

2.      Apple admits that this is the second complaint filed by Motorola Mobility in this district.  Apple further admits that *Motorola Mobility, Inc. v. Apple Inc.*, Case No. 1:10-cv-23580-RNS is still ongoing and that Motorola Mobility has accused a number of Apple products of infringing the Asserted Patents in that suit.  Apple further admits that Judge Ungaro issued an order on December 6, 2011, D.E. 198, striking Motorola Mobility's infringement contentions with respect to certain Apple products and infringement theories.  Apple denies that any accused Apple products stricken from Motorola Mobility's Supplemental Infringement Contentions by Judge Ungaro's order infringe any of the Asserted Patents.  Apple denies all the remaining allegations of Paragraph 2.

## PARTIES

3.      On information and belief, Apple admits that Motorola Mobility is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 600 North U.S. Highway 45, Libertyville, Illinois 60048.  On information and belief, Apple admits that Motorola Mobility formerly was a wholly-owned subsidiary of Motorola, Inc. Apple further admits, on information and belief, that the Asserted Patents appear to have been assigned to Motorola Mobility, Inc. on July 31, 2010.  Apple denies all the remaining allegations of Paragraph 3.

4.      Apple admits that it is a corporation organized and existing under the laws of the State of California, having a principal place of business at 1 Infinite Loop, Cupertino, California 95014.

## JURISDICTION AND VENUE

5.      Apple admits that Motorola Mobility's Complaint purports to be an action that arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., but denies any wrongdoing or liability on its own behalf for the reasons stated herein.  Apple admits that this

Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).  Except as so expressly admitted herein, Apple denies the remaining allegations in Paragraph 5 of the Complaint.

6.      Apple admits that this Court has personal jurisdiction over Apple.  Apple admits that it offers for sale and has sold its products to persons within this District, operates retail stores within this District, conducts business in this District, and has a registered agent for the purposes of accepting service of process in this District.  Apple denies that it has committed any acts of infringement within this District and specifically denies any wrongdoing, infringement, inducement of infringement or contribution to infringement.  Except as so expressly admitted herein, Apple denies the allegations in Paragraph 6 of the Complaint.

7.      Apple admits that venue is proper as to Apple in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(b).  Except as so expressly admitted herein, Apple denies the allegations in Paragraph 7 of the Complaint.

### COUNT I:  INFRINGEMENT OF U.S. PATENT NO. 5,710,987

8.      Apple refers to and incorporates herein its answers as provided in Paragraphs 1-7 above.

9.      Apple admits that the '987 patent states on its face that it is entitled "Receiver Having Concealed External Antenna."  Apple further admits that the '987 patent states on its face that it issued on January 20, 1998.  Apple denies that the '987 patent was lawfully issued.  Except as so expressly admitted herein, Apple denies the allegations in Paragraph 9 of the Complaint.

10.      On information and belief, Apple admits that the '987 patent appears to have been assigned to Motorola Mobility, Inc. on July 31, 2010.  Apple is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations concerning Motorola Mobility's purported ownership of all right, title and interest in the '987 patent and, therefore, denies those allegations.

11.      Apple denies the allegations in Paragraph 11 of the Complaint.

12.      Apple denies the allegations in Paragraph 12 of the Complaint.

13.      Apple denies the allegations in Paragraph 13 of the Complaint.

14.      Apple denies the allegations in Paragraph 14 of the Complaint.

15.      Apple denies the allegations in Paragraph 15 of the Complaint.

### COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 5,754,119

16.      Apple refers to and incorporates herein its answers as provided in Paragraphs 1-7 above.

17.      Apple admits that the '119 patent states on its face that it is entitled "Multiple Pager Status Synchronization System and Method."  Apple further admits that the '119 patent states on its face that it issued on May 19, 1998.  Apple denies that the '119 patent was lawfully issued.  Except as so expressly admitted herein, Apple denies the allegations in Paragraph 17 of the Complaint.

18.      On information and belief, Apple admits that the '119 patent appears to have been assigned to Motorola Mobility, Inc. on July 31, 2010.  Apple is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations concerning Motorola Mobility's purported ownership of all right, title and interest in the '119 patent and, therefore, denies those allegations.

19.      Apple denies the allegations in Paragraph 19 of the Complaint.

20.      Apple denies the allegations in Paragraph 20 of the Complaint.

21.      Apple denies the allegations in Paragraph 21 of the Complaint.

22.      Apple denies the allegations in Paragraph 22 of the Complaint.

23.      Apple denies the allegations in Paragraph 23 of the Complaint.

### COUNT III:  INFRINGEMENT OF U.S. PATENT NO. 5,958,006

24.      Apple refers to and incorporates herein its answers as provided in Paragraphs 1-7 above.

25.      Apple admits that the '006 patent states on its face that it is entitled "Method and Apparatus for Communicating Summarized Data."  Apple further admits that the '006 patent

states on its face that it issued on September 28, 1999.  Apple denies that the '006 patent was lawfully issued.  Except as so expressly admitted herein, Apple denies the allegations in Paragraph 25 of the Complaint.

26.     Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the allegations in Paragraph 26 of the Complaint and, therefore, denies those allegations.

27.     Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the allegations in Paragraph 27 of the Complaint and, therefore, denies those allegations.

28.     Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning Motorola Mobility's purported ownership of all right, title and interest in the '006 patent and, therefore, denies those allegations.

29.     Apple denies the allegations in Paragraph 29 of the Complaint.

30.     Apple denies the allegations in Paragraph 30 of the Complaint.

31.     Apple denies the allegations in Paragraph 31 of the Complaint.

32.     Apple denies the allegations in Paragraph 32 of the Complaint.

33.     Apple denies the allegations in Paragraph 33 of the Complaint.

### COUNT IV:  INFRINGEMENT OF U.S. PATENT NO. 6,101,531

34.     Apple refers to and incorporates herein its answers as provided in Paragraphs 1-7 above.

35.     Apple admits that the '531 patent states on its face that it is entitled "System for Communicating User-Selected Criteria Filter Prepared at Wireless Client to Communication Server for Filtering Data Transferred from Host to Said Wireless Client."  Apple further admits that the '531 patent states on its face that it issued on August 8, 2000.  Apple denies that the '531 patent was lawfully issued.  Except as so expressly admitted herein, Apple denies the allegations in Paragraph 35 of the Complaint.

36.     Apple is without knowledge or information sufficient to form a belief as to the

5

truth of the allegations concerning the allegations in Paragraph 36 of the Complaint and, therefore, denies those allegations.

37.     On information and belief, Apple admits that the '531 patent appears to have been assigned to Motorola Mobility, Inc. on July 31, 2010.  Apple is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations concerning Motorola Mobility's purported ownership of all right, title and interest in the '531 patent and, therefore, denies those allegations.

38.     Apple denies the allegations in Paragraph 38 of the Complaint.

39.     Apple denies the allegations in Paragraph 39 of the Complaint.

40.     Apple denies the allegations in Paragraph 40 of the Complaint.

41.     Apple denies the allegations in Paragraph 41 of the Complaint.

42.     Apple denies the allegations in Paragraph 42 of the Complaint.

## COUNT V:  INFRINGEMENT OF U.S. PATENT NO. 6,008,737

43.     Apple refers to and incorporates herein its answers as provided in Paragraphs 1-7 above.

44.     Apple admits that the '737 patent states on its face that it is entitled "Apparatus for Controlling Utilization of Software Added to a Portable Communication Device."  Apple further admits that the '737 patent states on its face that it issued on December 28, 1999.  Apple denies that the '737 patent was lawfully issued.  Except as so expressly admitted herein, Apple denies the allegations in Paragraph 44 of the Complaint.

45.     On information and belief, Apple admits that the '737 patent appears to have been assigned to Motorola Mobility, Inc. on July 31, 2010.  Apple is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations concerning Motorola Mobility's purported ownership of all right, title and interest in the '737 patent and, therefore, denies those allegations.

46.     Apple denies the allegations in Paragraph 46 of the Complaint.

47.     Apple denies the allegations in Paragraph 47 of the Complaint.

48.     Apple denies the allegations in Paragraph 48 of the Complaint.

49.     Apple denies the allegations in Paragraph 49 of the Complaint.

50.     Apple denies the allegations in Paragraph 50 of the Complaint.

### COUNT VI:  INFRINGEMENT OF U.S. PATENT NO. 6,377,161

51.     Apple refers to and incorporates herein its answers as provided in Paragraphs 1-6 above.

52.     Apple admits that the '161 patent states on its face that it is entitled "Method and Apparatus in a Wireless Messaging System for Facilitating an Exchange of Address Information."  Apple further admits that the '161 patent states on its face that it issued on April 23, 2002.  Apple denies that the '161 patent was duly or lawfully issued.  Except as so expressly admitted herein, Apple denies the allegations in Paragraph 52 of the Complaint.

53.     On information and belief, Apple admits that the '161 patent appears to have been assigned to Motorola Mobility, Inc. on July 31, 2010.  Apple is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations concerning Motorola Mobility's purported ownership of all right, title and interest in the '161 patent and, therefore, denies those allegations.

54.     Apple denies the allegations in Paragraph 54 of the Complaint.

55.     Apple denies the allegations in Paragraph 55 of the Complaint.

56.     Apple denies the allegations in Paragraph 56 of the Complaint.

57.     Apple denies the allegations in Paragraph 57 of the Complaint.

58.     Apple denies the allegations in Paragraph 58 of the Complaint.

### DEMAND FOR JURY TRIAL

59.     Apple does not object to a trial by jury on all issues so triable.

### REQUEST FOR RELIEF

60.     Apple denies that Motorola Mobility is entitled to any of the relief sought in its prayer for relief, including that requested in Paragraphs (a) through (f).  Apple has not directly or indirectly infringed the Asserted Patents, either literally or by the doctrine of equivalents,

willfully or otherwise.  Motorola Mobility is not entitled to recover statutory damages, compensatory damages, enhanced damages, an accounting, injunctive relief, costs, fees, interest or any other type of recovery from Apple.  Motorola Mobility's prayer should, therefore, be denied in its entirety and with prejudice, and Motorola Mobility should take nothing.

## II.  DEFENSES

In addition to the defenses described below, Apple expressly reserves the right to allege additional defenses as they become known through the course of discovery.

### FIRST DEFENSE – FAILURE TO STATE A CLAIM

61.     The Complaint fails to state a claim upon which relief can be granted because Apple has not performed any act or thing and is not proposing to perform any act or thing in violation of any rights validly belonging to Motorola Mobility

### SECOND DEFENSE – NONINFRINGEMENT

62.     Apple does not infringe and has not infringed, either directly, indirectly, contributorily or by inducement, any claims of the Asserted Patents, either literally or under the doctrine of equivalents, willfully or otherwise.

### THIRD DEFENSE – PATENT INVALIDITY

63.     Motorola Mobility's alleged claims for infringement of the Asserted Patents are barred because each and every claim of the Asserted Patents is invalid for failure to comply with the requirements of Title 35 of the United States Code, including but not limited to Sections 102, 103 and/or 112.

### FOURTH DEFENSE – LACHES

64.     Motorola Mobility's claims for relief are barred in whole or in part by the equitable doctrine of laches.

### FIFTH DEFENSE – ESTOPPEL

65.     Motorola Mobility's claims for relief are barred in whole or in part by the doctrine of equitable estoppel.

## SIXTH DEFENSE – STATUTE OF LIMITATIONS

66.     To the extent Motorola Mobility seeks damages for alleged infringement more than six years prior to filing of this action, the relief sought by Motorola Mobility is barred by 35 U.S.C. § 286.

## SEVENTH DEFENSE – ABSOLUTE INTERVENING RIGHTS

67.     To the extent Motorola Mobility seeks damages for alleged infringement of claims 25-27 of the '006 patent before January 12, 2010, the date of issue for the reexamination certificate of the '006 patent, the relief sought by Motorola Mobility is barred by 35 U.S.C. § 252.

## EIGHTH DEFENSE – EQUITABLE INTERVENING RIGHTS

68.     To the extent Motorola Mobility seeks damages for alleged infringement of claims 25-27 of the '006 patent after January 12, 2010, the date of issue for the reexamination certificate of the '006 patent, the relief sought by Motorola Mobility is barred by 35 U.S.C. § 252.

## NINTH DEFENSE – NOTICE

69.     To the extent Motorola Mobility seeks damages for alleged infringement prior to its giving actual or constructive notice of the '987, '119, '006,'531, '737, and '161 patents to Apple, the relief sought by Motorola Mobility is barred by 35 U.S.C. § 287.

## TENTH DEFENSE – PROSECUTION HISTORY ESTOPPEL

70.     Motorola Mobility is estopped from construing the claims of the '987, '119, '006, '737, '531 and '161 patents in such a way as may cover any of Apple's products or processes by reasons of statements made to the U.S. Patent and Trademark Office ("Patent Office") during the prosecution of the applications that led to the issuance of the '987, '119, '006,'531, '737,  and '161 patents.

## ELEVENTH DEFENSE – PATENT EXHAUSTION/IMPLIED LICENSE

71.     The relief sought by Motorola Mobility is barred in whole or in part by the doctrines of patent exhaustion and/or implied license.

**TWELFTH DEFENSE – LACK OF STANDING**

72.     Motorola Mobility lacks standing to bring this suit because essential parties are not named in this action.

**THIRTEENTH DEFENSE – NO INJUNCTIVE RELIEF**

73.     To the extent Motorola Mobility seeks injunctive relief for alleged infringement, the relief sought by Motorola Mobility is unavailable because any alleged injury to Motorola Mobility is not immediate or irreparable and because Motorola Mobility has an adequate remedy at law for any alleged injury.

**FOURTEENTH DEFENSE – INEQUITABLE CONDUCT**

74.     The '006 patent is unenforceable under the doctrine of inequitable conduct.  On information and belief, prior to the issuance of the '006 patent, at least two of the inventors named on that patent, Gene Eggleston and Mitch Hansen, as well as the attorneys who prosecuted the '006 patent, including Anthony J. Sarli, Jr. and Terri S. Hughes, were aware of material information, including prior art and office actions rejecting the claims of a pending, related patent application on the basis of that prior art, but withheld, concealed and/or mischaracterized that information with the intent to deceive the Patent Office.

75.     On December 19, 1995, Sarli filed United States patent application number 08/574,541, which ultimately issued as the '006 patent ("the '006 application").  The '006 application was filed as a continuation-in-part of United States patent application number 08/557,657 ("the parent application").  On the same day the '006 patent application was filed, Sarli filed another application claiming priority to the same parent application, which was United States patent application number 08/574,537 ("the related application).

76.     Eggleston and Hansen were named as inventors on the '006 application and the related application.  Sarli filed both the '006 application and the related application on behalf of the named inventors.  Hughes assisted in prosecuting the '006 application (at least as early as January 8, 1998) and the related application (at least as early as July 22, 1997).

77.     The '006 application and the related application were examined by different

10

examiners in different art units within the PTO.  Eric Coleman examined the '006 application, while Le Hien Luu examined the related application.

78.     Sarli, Hughes, Eggleston, and Hansen had a duty to disclose to the PTO material and non-cumulative information relating to the subject matter claimed in the '006 application.  This duty to disclose such information began on December 19, 1995, the date the '006 application was filed, and extended through September 28, 1999, the date the PTO issued the '006 patent.

79.     During prosecution of the '006 application, Sarli, Hughes, Eggleston, and Hansen knew or should have known of the similarity between the '006 application and the related application and knew or should have known that both applications derived from the same parent application.  They also knew or should have known that different examiners from different art groups were processing the '006 application and the related application.  On information and belief, Sarli, Hughes, Eggleston, and Hansen had no reason to believe that each examiner knew about the other co-pending application.

### The Inventors' and Attorneys' Failure to Disclose the Related Application and Material Rejections Thereof Constituted Inequitable Conduct

80.     Sarli, Hughes, Eggleston, and Hansen failed to disclose the existence of the related application and the office actions rejecting its claims to the PTO in connection with the '006 application's prosecution.

81.     The '006 application and the related application were directed to substantially the same subject matter.  The related application's "Field of the Invention," "Background," "Brief Description of the Drawings," "Detailed Description" and accompanying figures are all extremely similar in form and substance to those of the '006 patent application.

82.     The claims of the '006 application and the related application were also directed to substantially the same subject matter.  For example, original claims 1 and 5 of the '006 application read as follows:

> 1.  A system for communicating data with a communication unit
> associated with a first user comprising:
>           a host server; and

11

a communication server, in communication with the host server and communication unit, comprising a data transfer manager operable for controlling communication of the data from the host server to the communication unit including filtering of the data based on at least one user-definable filter parameter and providing the communication unit with identifying information about any of the data not passing the at least one filter parameter.

5. The system of claim 1, wherein:
the data transfer manager is further operable for communicating the at least one filter parameter to the host server;
the host server is operable for applying the at least one filter parameter to determine whether to transfer to the communication server a first data unit of the data, and when the first data unit is determined not to pass the at least one filter parameter, for determining a first identifying information about the first data unit and sending the first identifying information to the communication server; and
the communication server further comprising a summary store for storing the first identifying information, and being operable for sending the first identifying information to the communication unit.

These claims were amended and ultimately issued as claims 1 and 5 in the '006 patent:

1. A system for communicating data to a communication unit associated with a first user comprising:
a host server operable for:
filtering individual data units based on at least one user-definable filter parameter to identify whether a data unit is a qualifying or non-qualifying data unit;
for qualifying data units, sending an identifying information part and an additional part to the communication unit; and
for non-qualifying data units sending the identifying information part without the additional part to the communication unit; and
a communication server, in communication with the host server and the communication unit, comprising a data transfer manager operable for controlling communication of the qualifying and non-qualifying data units from the host server to the communication unit including sending the identifying information part and the additional part for the qualifying data units and sending the identifying part without the additional part for the non-qualifying data units to the communication unit.

5. The system of claim 1, wherein:
the data transfer manager is further operable for communicating the at least one filter parameter to the host server;
the host server is operable for applying the at least one filter parameter to determine whether to transfer to the communication server a first data unit of the data, and when the

first data unit is determined not to pass the at least one filter parameter, for determining a first identifying information about the first data unit and sending the first identifying information to the communication server; and

the communication server further comprising a summary store for storing the first identifying information, and being operable for sending the first identifying information to the communication unit.

Similarly, original claims 1, 5, 6, and 7 of the related application read as follows:

1.   A system for communicating data with a communication unit associated with a first user comprising:

a host server; and

a communication server, in communication with the host server and communication unit, comprising a data transfer manager operable for controlling communication of data between the communication unit and host server including filtering data from the host server based on at least one user-definable filter parameter.

5.   The system of claim 1, wherein the communication server further comprises a user profile store storing the filter parameter, and the data transfer manager is further operable for determining the filter parameter from the user profile store and communicating the filter parameter to the host server, the host server being operable for applying the filter parameter to determine whether to transfer to the communication server a first data unit addressed to the communication unit.

6.   The system of claim 5, wherein the data transfer manager further comprises a query manager operable for determining the filter parameter from the user profile store and communicating a query object including the filter parameter to the host server, the host server being operable for applying the filter parameter to filter the first data unit before transferring the first data unit to the communication server.

7.   The system of claim 6, wherein the communication server further comprises a summary database for storing identifying information about filtered data units, the host server being operable for sending identifying information of a second data unit when, after applying the filter parameter, the second data unit is determined to match the filter parameter, the query manager being operable for storing the identifying information of the second data unit in the summary database and sending the identifying information of the second data unit to the communication unit.

83.   The '006 application and the related application contained similar subject matter.

Information relating to the related application, including knowledge of the existence of the

related application, was not cumulative to information of record in the prosecution history of the '006 application.  The existence of the related application was material to the prosecution of the '006 application.

84.     Sarli, Hughes, Eggleston, and Hansen had a duty to disclose the existence of the related application to the examiner of the '006 application.  On information and belief, they failed to disclose the existence of the related application to the examiner of the '006 application with intent to deceive the PTO.  Their failure to disclose the existence of the related application to the examiner of the '006 application constituted inequitable conduct.

85.     Sarli, Hughes, Eggleston, and Hansen also had a duty to disclose to the examiner of the '006 application any rejections of substantially similar claims in the related application.

86.     In a April 24, 1997 Office Action, Examiner Luu rejected all 39 claims in the related application.  The examiner rejected 19 claims as anticipated by U.S. Patent No. 5,621,727 ("Vaudreuil"), 15 claims as obvious over Vaudreuil alone, and 4 claims as obvious over Vaudreuil in combination with either U.S. Patent No. 5,276,680 ("Messenger") or U.S. Patent No. 5,406,557 ("Baudoin").  This Office Action was addressed to Sarli.  As exemplified by the above comparison of claim 5 of the '006 application with original claim 7 of the related application, the elements found by Examiner Luu to be disclosed in Vaudreuil are the same or substantially similar to those contained in the claims of the pending '006 application.

87.     In response to these rejections, attorney J. Ray Wood (with Hughes's assistance) filed an amendment on July 22, 1997.  The remarks included with this amendment expressly referenced Vaudreuil and attempted to distinguish it from the invention in the application.

88.     In a November 19, 1997 Final Office Action, the PTO again rejected all pending claims.  The examiner rejected 43 claims as obvious over Vaudreuil in combination with U.S. Patent No. 5,621,727 ("Emery") and 2 claims as obvious over Vaudreuil in combination with Emery and Baudoin.  Again, this Office Action was addressed to Sarli.  As exemplified by the above comparison of claim 5 of the '006 application with original claim 7 of the related application, the elements found by Examiner Luu to be disclosed in Vaudreuil are the same or

14

substantially similar to those contained in the claims of the pending '006 application.

89.     In response to the Final Office Action, Hughes filed another amendment on April 15, 1998.  This amendment canceled 39 claims, including original claim 7.  It also expressly referenced Vaudreuil and attempted to distinguish it from the invention in the application's remaining claims.

90.     In an April 21, 1998 Advisory Action, the PTO decided that the amendment would not be entered and that all claims remained rejected.  When Sarli and Hughes did not respond by the July 15, 1998 deadline, the PTO issued a notice of abandonment.

91.     On April 26, 1999, the examiner of the '006 application allowed all pending claims in the application.  The examiner previously rejected these claims, but reversed his decision based on argument from Hughes that the prior art did not disclose the feature of the invention of providing identifying information about data not passing the filter parameter.

92.     As named inventors and prosecution counsel of record for both the '006 application and the related application, Sarli, Hughes, Eggleston, and Hansen were aware of the April 24, 1997 and November 19, 1997 Office Actions in connection with the related application.  Because the claims of the related application and the '006 application related to substantially similar subject matter, Examiner Luu's April 24, 1997 and November 19, 1997 Office Actions rejecting all claims of the related application based on Vaudreuil, Messenger, Baudoin, and Emery were material to the prosecution of the '006 application.  Examiner Luu's rejections were not cumulative of any other information of record in the prosecution history of the '006 application.

93.     Sarli, Hughes, Eggleston, and Hansen had a duty to disclose Examiner Luu's Office Actions rejecting the related application's claims to the examiner of the '006 application.  They failed to disclose these Office Actions.

94.     On information and belief, Sarli, Hughes, Eggleston, and Hansen failed to disclose these Office Actions with intent to deceive the PTO, and their actions therefore constituted inequitable conduct.  In November 1997, they received the Final Office Action

rejecting for the second time all claims in the related application based on Vaudreuil, including original claim 7, which claimed the use of a summary database to store identifying information about filtered data units and the sending of that identifying information to the communication unit.  Two months later, in January 1998, they filed an amendment to the claims in the '006 application without referencing the Office Actions rejecting all claims in the related application. Three months after that, in April 1998, they cancelled 42 of the related application's 46 claims, including original claim 7.  Yet, they continued to argue to the examiner of the '006 application – without disclosing the Office Actions rejecting all claims in the related application – that the prior art did not disclose the feature of providing identifying information about data not passing the filter parameter.  The examiner subsequently allowed the claims of the '006 patent.

### The Inventors' and Attorneys' Failure to Disclose the Vaudreuil Reference Constituted Inequitable Conduct

95.     During the prosecution of the '006 application, Sarli, Hughes, Eggleston, and Hansen failed to disclose Vaudreuil.  A copy of Vaudreuil is attached as Exhibit A hereto.

96.     Upon information and belief, Sarli, Hughes, Eggleston, and Hansen had knowledge of Vaudreuil at least by April 24, 1997, during the pendency of the '006 application, and more than two years and five months before the issuance of the '006 patent.  They learned of Vaudreuil at least by April 24, 1997, when the examiner reviewing the related application issued an office action rejecting all claims and identifying Vaudreuil as relevant to the prosecution of that application in the Notice of References Cited.  Vaudreuil is one of only six references listed on the examiner's Notice of References Cited and was the basis (at least in part) for the rejection of every single claim in the related application.

97.     Upon information and belief, Sarli, Hughes, Eggleston, and Hansen knew that Vaudreuil was material prior art to the '006 patent application because Vaudreuil teaches a communications system that "can filter and route messages given the preferences of each user." *See* Exhibit A col. 26:2-4.  Moreover, this communications system contains a translator that can "use many different filters in sequence to accomplish . . . data-to-data conversion," *id.* col.

19:23-27.  Upon information and belief, Sarli, Hughes, Eggleston, and Hansen further knew that Vaudreuil was material prior art because all of the original claims of the related application, including original claim 7, were twice rejected on the basis of Vaudreuil.

98.     Vaudreuil is highly material prior art to the '006 patent.  The examiner of the related application determined that Vaudreuil anticipated or rendered obvious (either alone or in combination with other prior art) all claims of the related application.  For example, the examiner concluded that Vaudreuil anticipated original claim 7 of the related application because Vaudreuil teaches a summary database.  This summary database stores the user's routing and filtering settings (Exhibit A col. 23:14-17), such as the type of translation the user desires that certain messages undergo (*id.* col. 19:23-27).  The storing and sending of identifying information claimed in the '006 application is a form of translation for messages that meet a certain criteria (i.e., filtered messages).

99.     Vaudreuil is not cumulative to any references disclosed during prosecution of the '006 Patent.  None of the references cited to the Patent Office describe the inventions claimed in Vaudreuil.

100.     Upon information and belief, Sarli, Hughes, Eggleston, and Hansen failed to disclose Vaudreuil during prosecution of the '006 patent with an intent to deceive the Patent Office.  In November 1997, they received the Final Office Action rejecting for the second time all claims in the related application based on Vaudreuil, including original claim 7, which claimed the use of a summary database to store identifying information about filtered data units and the sending of that identifying information to the communication unit.  Two months later, in January 1998, they filed an amendment to the claims in the '006 application without referencing Vaudreuil.  Three months after that, in April 1998, they cancelled 42 of the related application's 46 claims, including original claim 7.  Yet, they continued to argue to the examiner of the '006 application – without disclosing Vaudreuil – that the prior art did not disclose the feature of providing identifying information about data not passing the filter parameter.  The examiner subsequently allowed the claims of the '006 patent.

101.    Vaudreuil qualifies as prior art to the '006 patent under 35 U.S.C. § 102(e)(2). The United States patent application that issued as Vaudreuil, U.S. Patent Application No. 499,198, was filed on July 7, 1995, more than five months prior to the December 19, 1995 filing date of the '006 application.

102.    Upon information and belief, the examiner did not consider Vaudreuil during prosecution of the '006 patent.

103.    The above acts of fraud on the Patent Office committed during the prosecution of the '006 patent constitute inequitable conduct.

### The Inventors' and Attorneys' Failure to Disclose the Harkins Reference Constituted Inequitable Conduct

104.    During the prosecution of the '006 patent application, Sarli, Hughes, Eggleston, and Hansen failed to disclose U.S. Patent No. 5,513,126 ("Harkins"), filed on October 4, 1993 and issued on April 30, 1996.  A copy of Harkins is attached as Exhibit B hereto.

105.    Upon information and belief, Sarli, Hughes, Eggleston, and Hansen had knowledge of Harkins at least by April 24, 1997, during the pendency of the '006 application, and more than two years and five months before the issuance of the '006 patent.  They learned of Harkins at least by April 24, 1997, when the examiner reviewing the related application issued an office action rejecting all claims and identifying Harkins as relevant to the prosecution of that application in the Notice of References Cited.  *See* Exhibit C, at 9.  Harkins is one of only six references listed on the examiner's Notice of References Cited.  *See id.*

106.    Upon information and belief, Eggleston, Hansen, Sarli, and Hughes knew that Harkins was material prior art to the '006 patent application because Harkins discloses a "Network Having Selectively Accessible Recipient Prioritized Communication Channel Profiles."  In particular, Harkins teaches automatic filtering of communications sent by a sender to a receiver as defined by a receiver profile.  *See* Exhibit B, at Abstract.  "The receiver profile establishes the properties and mode for receipt of information for receivers on the network . . . . Receivers have additional control over network senders by defining an information filter which

18

further controls sender channel access (to a receiver) by defining some channels as having priority of access such as direct or delayed access, as well as selectively permitting senders to override the receiver profile." *Id.* Upon information and belief, Eggleston, Hansen and Hughes further knew that Harkins was material prior art because they identified Harkins to the Patent Office during prosecution of the '531 patent. *See* Exhibit D, at 5.

107. Harkins is highly material prior art to the '006 patent. The '006 is currently undergoing its second *ex parte* reexamination. *See* Exhibit E. The reexamination examiner determined that "Harkins raises a substantial new question of patentability regarding claims 24 and 25" of the '006 patent because it provides "new and non-cumulative teachings that a reasonable examiner would consider important in determining patentability of the claims." *Id.* at 10. Claim 24 (and dependent claim 25) as originally issued include the following limitation:

> a data transfer manager, coupled with the user parameter store, adapted to control communication of data units between the communication unit and the host server including receiving individually filtered data units from the host server based on at least one user-definable filter parameters to identify whether a data unit is a qualifying or non-qualifying data unit, wherein for qualifying data units, a summary part and an additional part is received and for non-qualifying data units, the summary part without the additional part is received, and providing the communication unit with the summary part and the additional part for qualifying data units and providing the communication unit with the summary part without the additional part for non-qualifying data units.

The only alteration to this claim limitation after the first *ex parte* reexamination was correction of a grammatical error through replacing with word "parameters" with the word "parameter." *See* Exhibit 3 to Motorola Mobility's Complaint, at 20-21. As explained by the second reexamination examiner, the above quoted limitation is the "distinguishing feature" of claims 24 and 25 that rendered those claims patentable. Exhibit E, at 10-11. Harkins is material to claims 24 and 25 of the '006 patent because it reads on this "distinguishing feature":

> Harkins raises a substantial new question by providing teachings that are relevant to the distinguishing feature of claims 24 and 25. For example, Harkins suggests receiving individually filtered data units from the host server based on at least one user-definable filter parameter to identify whether a data unit is a qualifying or non-

qualifying data unit by teaching a device server and Communication Channel Admin Server applying filtering parameters before passing the data to the communication unit.

*Id.* at 11 (citing Harkins, col. 12; ll. 6-11; col. 7, ll. 52-54).

108.   Harkins is not cumulative to any references disclosed during prosecution of the '006 Patent.  None of the references cited to the Patent Office describe the inventions claimed in Harkins, which anticipate and/or render obvious the '006 patent for the reasons identified above and in Exhibit E.

109.   Upon information and belief, Eggleston, Hansen, Sarli, and Hughes failed to disclose Harkins during prosecution of the '006 patent with an intent to deceive the Patent Office.  In April 1997, they received a Final Office Action rejecting all claims in the related application and identifying Harkins as a relevant prior art reference.  Six months later, in October 1998, they received an Office Action rejecting all claims in the '006 application.  Three months later, when they filed an amendment to the claims in the '006 application, they did so without referencing Harkins.

110.   Harkins qualifies as prior art to the '006 patent under 35 U.S.C. § 102(e)(2).  The United States patent application that issued as Harkins, U.S. Patent Application No. 08/130,828, was filed on October 4, 1993, more than two years prior to the December 19, 1995 filing date of the '541 application.  In addition, Harkins issued on April 30, 1996, nearly three-and-a-half years before issuance of the '006 patent.

111.   Upon information and belief, the examiner did not consider Harkins during prosecution of the '006 patent.

112.   The above acts of fraud on the Patent Office committed during the prosecution of the '006 patent render the '006 patent unenforceable.

### III.  COUNTERCLAIMS

Counterclaim-Plaintiff Apple counterclaims against Counterclaim-Defendants Motorola Mobility, HTC Corporation, HTC America Inc., One & Company Design, Inc., and HTC America Innovation Inc. as follows:

## PARTIES

113.    Apple is a corporation organized under the laws of the State of California and having a principal place of business at 1 Infinite Loop, Cupertino, CA 95014.

114.    Upon information and belief, Motorola Mobility is a corporation organized under the laws of the State of Delaware and having a principal place of business at 600 North U.S. Highway 45, Libertyville, Illinois 60048.

115.    Upon information and belief, HTC Corporation is a corporation organized under the laws of Taiwan and having a principal place of business at No. 23, Xinghua Road, Taoyuan City, Taoyuan County 330, Taiwan, R.O.C.  Upon information and belief, HTC Corporation is, directly or indirectly, the parent corporation of dozens of subsidiaries, some of which have holdings in or of each other.  Upon information and belief, HTC Corporation is engaged in the design, research and development, manufacturing, and sales of mobile communications devices.

116.    Upon information and belief, HTC America Inc. is a corporation currently organized under the laws of the State of Washington and having a principal place of business at 13920 SE Eastgate Way, Suite 200, Bellevue, WA 98005.  Upon information and belief, HTC America Inc. is a wholly-owned subsidiary of HTC America Holding Inc., which is itself a wholly-owned subsidiary of an entity called HTC EUROPE CO., LTD., which is itself a wholly-owned subsidiary of an entity called HTC Netherlands B.V., which is itself a wholly-owned subsidiary of an entity called HTC Holding Cooperatief U.A., which is itself 99% controlled by an entity called High Tech Computer Asia Pacific Pte. Ltd, which is itself a wholly-owned subsidiary of HTC Corporation.  Upon information and belief, HTC America is engaged in the marketing, repair, and after-sale services of mobile communications devices.

117.    Upon information and belief, One & Company Design, Inc. ("One & Company") is a corporation organized under the laws of the State of California and having a principal place of business at 2700 18th Street, San Francisco, CA 94110.  Upon information and belief, One & Company is a wholly-owned subsidiary of HTC America Holding Inc.  Upon information and belief, One & Company is engaged in the design, research, and development of application

software for HTC-branded mobile communications devices.

118.     Upon information and belief, HTC America Innovation, Inc., is a corporation organized under the laws of the State of Washington and having a principal place of business at 13920 Eastgate Way, Suite 400, Bellevue, WA 98005.  Upon information and belief, HTC America Innovation, Inc. is a wholly-owned subsidiary of HTC America Holding Inc.  Upon information and belief, HTC America Innovation, Inc. is engaged in the design, research, and development of application software for HTC-branded mobile communications devices.

<strong>JURISDICTION AND VENUE</strong>

119.     These counterclaims arise under Title 35 of the United States Code.  The Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

120.     Motorola Mobility is subject to personal jurisdiction in this district arising out of its systematic and continuous contacts with this district and its purposeful acts and/or transactions directed toward this district.  Such contacts include without limitation Motorola Mobility's past and ongoing infringing conduct in this district, Motorola Mobility's bringing of this lawsuit in this district, and, on information and belief, Motorola Mobility's presence and conduct of business in this district.

121.     HTC Corporation, HTC America Inc., One & Company Design, Inc. and HTC America Innovation (collectively "HTC") are subject to personal jurisdiction in this district arising out of their systematic and continuous contacts with this district and their purposeful acts and/or transactions directed toward this district.  Such contacts include without limitation HTC's past and ongoing infringing conduct in this district, such as the development and sale of infringing mobile communications devices with the intent and purpose that such devices be sold or used within this district, and, on information and belief, HTC's presence and conduct of business in this district.

122.     Venue is proper in this judicial district under 28 U.S.C. § 1391.

### FIRST COUNTERCLAIM – DECLARATORY JUDGMENT

### U.S. PATENT NO. 5,710,987

### AGAINST MOTOROLA MOBILITY

123.    Apple counterclaims against Motorola Mobility pursuant to the patent laws of the United States, Title 35 of the United States Code and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202.

124.    Motorola Mobility claims to be the owner of the '987 patent, entitled "Receiver Having Concealed External Antenna," filed on June 2, 1995 and issued on January 20, 1998. The '987 patent on its face identifies as inventor Thomas Eugene Paulick.  The '987 patent on its face identifies as assignee Motorola, Inc.  *See* Exhibit 1 of Motorola Mobility's Complaint.  On information and belief, the '987 patent appears to have been assigned to Motorola Mobility, Inc. on July 31, 2010.

#### A.    Declaration of Noninfringement

125.    Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-124 above as if fully set forth herein.

126.    An actual and justiciable controversy exists between Apple and Motorola Mobility with respect to the '987 patent because Motorola Mobility has brought an action against Apple alleging that Apple infringes the '987 patent by making, using, offering for sale, selling and/or importing its iPhone 4 product, which allegation Apple denies.  Absent a declaration of noninfringement, Motorola Mobility will continue to wrongfully assert the '987 patent against Apple, and thereby cause Apple irreparable injury and damage.

127.    Apple has not infringed the '987 patent, either directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, and is entitled to a declaration to that effect.

128.    This is an exceptional case entitling Apple to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### B.    Declaration of Invalidity

129.    Apple realleges and incorporates by reference the answers and allegations set forth in Paragraphs 1-128 above as if fully set forth herein.

130.    An actual and justiciable controversy exists between Apple and Motorola Mobility with respect to the '987 patent because Motorola Mobility has brought an action against Apple alleging that Apple infringes the '987 patent by making, using, offering for sale, selling and/or importing its iPhone 4 product, which allegation Apple denies.  Absent a declaration of invalidity, Motorola Mobility will continue to wrongfully assert the '987 patent against Apple, and thereby cause Apple irreparable injury and damage.

131.    The '987 patent is invalid under the provisions of Title 35 of the United States Code, including but not limited to Sections 102, 103 and/or 112, and Apple is entitled to a declaration to that effect.

132.    This is an exceptional case entitling Apple to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### SECOND COUNTERCLAIM – DECLARATORY JUDGMENT

### U.S. PATENT NO. 5,754,119

### AGAINST MOTOROLA MOBILITY

133.    Apple counterclaims against Motorola Mobility pursuant to the patent laws of the United States, Title 35 of the United States Code and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202.

134.    Motorola Mobility claims to be the owner of the '119 patent, entitled "Multiple Pager Status Synchronization System and Method," filed on August 31, 1995 and issued on May 19, 1998.  The '119 patent on its face identifies as inventors Michael J. Deluca and Joan S. Deluca.  The '119 patent on its face identifies as assignee Motorola, Inc.  *See* Exhibit 2 of Motorola Mobility's Complaint.  On information and belief, the '119 patent appears to have been assigned to Motorola Mobility, Inc. on July 31, 2010.

### A.    Declaration of Noninfringement

135.    Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-134 above as if fully set forth herein.

136.    An actual and justiciable controversy exists between Apple and Motorola Mobility with respect to the '119 patent because Motorola Mobility has brought an action against Apple alleging that Apple infringes the '119 patent by making, using, offering for sale, selling and/or importing its MobileMe service, certain iPhone products, certain iPad products, iPod Touch products, MacBook products, MacBook Pro products, Mac Book Air products, iMac Products, Mac mini products and Mac Pro products, which allegation Apple denies.  Absent a declaration of noninfringement, Motorola Mobility will continue to wrongfully assert the '119 patent against Apple, and thereby cause Apple irreparable injury and damage.

137.    Apple has not infringed the '119 patent, either directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, and is entitled to a declaration to that effect.

138.    This is an exceptional case entitling Apple to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### B.    Declaration of Invalidity

139.    Apple realleges and incorporates by reference the answers and allegations set forth in Paragraphs 1-138 above as if fully set forth herein.

140.    An actual and justiciable controversy exists between Apple and Motorola Mobility with respect to the '119 patent because Motorola Mobility has brought an action against Apple alleging that Apple infringes the '119 patent by making, using, offering for sale, selling and/or importing its MobileMe service, certain iPhone products, certain iPad products, iPod Touch products, MacBook products, MacBook Pro products, Mac Book Air products, iMac Products, Mac mini products and Mac Pro products, which allegation Apple denies.  Absent a declaration of invalidity, Motorola Mobility will continue to wrongfully assert the '119 patent against Apple, and thereby cause Apple irreparable injury and damage.

141.    The '119 patent is invalid under the provisions of Title 35 of the United States Code, including but not limited to Sections 102, 103 and/or 112, and Apple is entitled to a declaration to that effect.

142.    This is an exceptional case entitling Apple to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## THIRD COUNTERCLAIM – DECLARATORY JUDGMENT
## U.S. PATENT NO. 5,958,006
## AGAINST MOTOROLA MOBILITY

143.    Apple counterclaims against Motorola Mobility pursuant to the patent laws of the United States, Title 35 of the United States Code and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202.

144.    Motorola Mobility claims to be the owner of the '006 patent, entitled "Method and Apparatus for Communicating Summarized Data," filed on December 19, 1995 and issued on September 28, 1999.  The '006 patent on its face identifies as inventors Gene Eggleston, Mitch Hansen and Anthony Rzany.  The '006 patent on its face identifies as assignee Motorola, Inc.  *See* Exhibit 3 of Motorola Mobility's Complaint.  On information and belief, the '006 patent appears to have been assigned to Motorola Mobility, Inc. on July 31, 2010.

### A.    Declaration of Noninfringement

145.    Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-144 above as if fully set forth herein.

146.    An actual and justiciable controversy exists between Apple and Motorola Mobility with respect to the '006 patent because Motorola Mobility has brought an action against Apple alleging that Apple infringes the '006 patent by making, using, offering for sale, selling and/or importing its MobileMe service, certain iPhone products and iPad with 3G product, which allegation Apple denies.  Absent a declaration of noninfringement, Motorola Mobility will continue to wrongfully assert the '006 patent against Apple, and thereby cause Apple irreparable injury and damage.

147.    Apple has not infringed the '006 patent, either directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, and is entitled to a declaration to that effect.

148.    This is an exceptional case entitling Apple to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### B.    Declaration of Invalidity

149.    Apple realleges and incorporates by reference the answers and allegations set forth in Paragraphs 1-148 above as if fully set forth herein.

150.    An actual and justiciable controversy exists between Apple and Motorola Mobility with respect to the '006 patent because Motorola Mobility has brought an action against Apple alleging that Apple infringes the '006 patent by making, using, offering for sale, selling and/or importing its MobileMe service, certain iPhone products and iPad with 3G product, which allegation Apple denies.  Absent a declaration of invalidity, Motorola Mobility will continue to wrongfully assert the '006 patent against Apple, and thereby cause Apple irreparable injury and damage.

151.    The '006 patent is invalid under the provisions of Title 35 of the United States Code, including but not limited to Sections 102, 103 and/or 112, and Apple is entitled to a declaration to that effect.

152.    This is an exceptional case entitling Apple to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### C.    Declaration of Unenforceability

153.    Apple realleges and incorporates by reference the answers and allegations set forth in Paragraphs 1-152 above as if fully set forth herein.

154.    An actual and justiciable controversy exists between Apple and Motorola Mobility with respect to the '006 patent because Motorola Mobility has brought an action against Apple alleging that Apple infringes the '006 patent by making, using, offering for sale, selling and/or importing its MobileMe service, certain iPhone products and iPad with 3G product, which

allegation Apple denies.  Absent a declaration of invalidity, Motorola Mobility will continue to wrongfully assert the '006 patent against Apple, and thereby cause Apple irreparable injury and damage.

155.    Upon information and belief, the '006 patent is unenforceable due to inequitable conduct for the reasons described in Apple's affirmative defenses, and Apple is entitled to a declaration to that effect.

156.    This is an exceptional case entitling Apple to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## FOURTH COUNTERCLAIM – DECLARATORY JUDGMENT
## U.S. PATENT NO. 6,101,531
## AGAINST MOTOROLA MOBILITY

157.    Apple counterclaims against Motorola Mobility pursuant to the patent laws of the United States, Title 35 of the United States Code and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202.

158.    Motorola Mobility claims to be the owner of the '531 patent, entitled "System for Communicating User-Selected Criteria Filter Prepared at Wireless Client to Communication Server for Filtering Data Transferred from Host to Said Wireless Client," filed on May 15, 1998 and issued on August 8, 2000.  The '531 patent on its face identifies as inventors Gene Eggleston and Mitch Hansen.  The '531 patent on its face identifies as assignee Motorola, Inc.  *See* Exhibit 5 of Motorola Mobility's Complaint.  On information and belief, the '531 patent appears to have been assigned to Motorola Mobility, Inc. on July 31, 2010.

### A.    Declaration of Noninfringement

159.    Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-158 above as if fully set forth herein.

160.    An actual and justiciable controversy exists between Apple and Motorola Mobility with respect to the '531 patent because Motorola Mobility has brought an action against Apple alleging that Apple infringes the '531 patent by making, using, offering for sale, selling

and/or importing its MobileMe service, certain iPhone products and its iPad with 3G product, which allegation Apple denies. Absent a declaration of noninfringement, Motorola Mobility will continue to wrongfully assert the '531 patent against Apple, and thereby cause Apple irreparable injury and damage.

161. Apple has not infringed the '531 patent, either directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, and is entitled to a declaration to that effect.

162. This is an exceptional case entitling Apple to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### B. Declaration of Invalidity

163. Apple realleges and incorporates by reference the answers and allegations set forth in Paragraphs 1-162 above as if fully set forth herein.

164. An actual and justiciable controversy exists between Apple and Motorola Mobility with respect to the '531 patent because Motorola Mobility has brought an action against Apple alleging that Apple infringes the '531 patent by making, using, offering for sale, selling and/or importing its MobileMe service, certain iPhone products and its iPad with 3G product, which allegation Apple denies. Absent a declaration of invalidity, Motorola Mobility will continue to wrongfully assert the '531 patent against Apple, and thereby cause Apple irreparable injury and damage.

165. The '531 patent is invalid under the provisions of Title 35 of the United States Code, including but not limited to Sections 102, 103 and/or 112, and Apple is entitled to a declaration to that effect.

166. This is an exceptional case entitling Apple to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

**FIFTH COUNTERCLAIM – DECLARATORY JUDGMENT**

**U.S. PATENT NO. 6,008,737**

**AGAINST MOTOROLA MOBILITY**

167.     Apple counterclaims against Motorola Mobility pursuant to the patent laws of the United States, Title 35 of the United States Code and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202.

168.     Motorola Mobility claims to be the owner of the '737 patent, entitled "Apparatus for Controlling Utilization of Software Added to a Portable Communication Device," filed on June 24, 1996 and issued on December 28, 1999.  The '737 patent on its face identifies as inventors Michael J. Deluca, Dough Kraul and Walter L. Davis.  The '737 patent on its face identifies as assignee Motorola, Inc.  *See* Exhibit 4 of Motorola Mobility's Complaint.  On information and belief, the '737 patent appears to have been assigned to Motorola Mobility, Inc. on July 31, 2010.

**A.      Declaration of Noninfringement**

169.     Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-168 above as if fully set forth herein.

170.     An actual and justiciable controversy exists between Apple and Motorola Mobility with respect to the '737 patent because Motorola Mobility has brought an action against Apple alleging that Apple infringes the '737 patent by making, using, offering for sale, selling and/or importing its App Store service, certain iPhone products, certain iPad products and the iPod Touch products, which allegation Apple denies.  Absent a declaration of noninfringement, Motorola Mobility will continue to wrongfully assert the '737 patent against Apple, and thereby cause Apple irreparable injury and damage.

171.     Apple has not infringed the '737 patent, either directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, and is entitled to a declaration to that effect.

172.    This is an exceptional case entitling Apple to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### B.    Declaration of Invalidity

173.    Apple realleges and incorporates by reference the answers and allegations set forth in Paragraphs 1-172 above as if fully set forth herein.

174.    An actual and justiciable controversy exists between Apple and Motorola Mobility with respect to the '737 patent because Motorola Mobility has brought an action against Apple alleging that Apple infringes the '737 patent by making, using, offering for sale, selling and/or importing its App Store service, certain iPhone products, certain iPad products and the iPod Touch products, which allegation Apple denies.  Absent a declaration of invalidity, Motorola Mobility will continue to wrongfully assert the '737 patent against Apple, and thereby cause Apple irreparable injury and damage.

175.    The '737 patent is invalid under the provisions of Title 35 of the United States Code, including but not limited to Sections 102, 103 and/or 112, and Apple is entitled to a declaration to that effect.

176.    This is an exceptional case entitling Apple to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### SIXTH COUNTERCLAIM – DECLARATORY JUDGMENT

### U.S. PATENT NO. 6,377,161

### AGAINST MOTOROLA MOBILITY

177.    Apple counterclaims against Motorola Mobility pursuant to the patent laws of the United States, Title 35 of the United States Code and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202.

178.    Motorola Mobility claims to be the owner of the '161 patent, entitled "Method and Apparatus in a Wireless Messaging System for Facilitating an Exchange of Address Information," filed on August 11, 1998 and issued on April 23, 2002.  The '161 patent on its face identifies as inventors Lisa Jane Gromelski and Gregory Lewis Cannon.  The '161 patent on its

face identifies as assignee Motorola, Inc.  *See* Exhibit 6 of Motorola Mobility's Complaint.  On information and belief, the '161 patent appears to have been assigned to Motorola Mobility, Inc. on July 31, 2010.

### A.    Declaration of Noninfringement

179.    Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-178 above as if fully set forth herein.

180.    An actual and justiciable controversy exists between Apple and Motorola Mobility with respect to the '161 patent because Motorola Mobility has brought an action against Apple alleging that Apple infringes the '161 patent by making, using, offering for sale, selling and/or importing certain of its iPhone products, which allegation Apple denies.  Absent a declaration of noninfringement, Motorola Mobility will continue to wrongfully assert the '161 patent against Apple, and thereby cause Apple irreparable injury and damage.

181.    Apple has not infringed the '161 patent, either directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, and is entitled to a declaration to that effect.

182.    This is an exceptional case entitling Apple to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### B.    Declaration of Invalidity

183.    Apple realleges and incorporates by reference the answers and allegations set forth in Paragraphs 1-182 above as if fully set forth herein.

184.    An actual and justiciable controversy exists between Apple and Motorola Mobility with respect to the '161 patent because Motorola Mobility has brought an action against Apple alleging that Apple infringes the '161 patent by making, using, offering for sale, selling and/or importing certain of its iPhone products, which allegation Apple denies.  Absent a declaration of invalidity, Motorola Mobility will continue to wrongfully assert the '161 patent against Apple, and thereby cause Apple irreparable injury and damage.

185.    The '161 patent is invalid under the provisions of Title 35 of the United States

Code, including but not limited to Sections 102, 103 and/or 112, and Apple is entitled to a declaration to that effect.

186.    This is an exceptional case entitling Apple to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## SEVENTH COUNTERCLAIM – INFRINGEMENT OF U.S. PATENT NO. 5,583,560 AGAINST MOTOROLA MOBILITY

187.    Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-186 above as if fully set forth herein.

188.    Apple is the owner of the entire right, title and interest in and to U.S. Patent No. 5,583,560 ("the '560 patent") entitled "Method and Apparatus for Audio-Visual Interface for the Selective Display of Listing Information on a Display," which was duly and legally issued on December 10, 1996 in the name of inventors Fabrice Florin, Michael Buettner, Glenn Corey, Janey Fritsche, Peter Maresca, Peter Miller, Bill Purdy, Stuart Sharpe and Nick West.  A copy of the '560 patent is attached as Exhibit F hereto.

189.    Upon information and belief, Motorola Mobility has infringed and continue to infringe, contributorily infringe and/or induce infringement of one or more claims of the '560 patent, both directly and indirectly, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271 (a), (b), and/or (c) through the making, use, importation, offer for sale and/or sale of set-top and DVR boxes that provide or operate in conjunction with an interactive Guide (for TV or DVR functions), including, but not limited to, the following products: DCT6208, DCT6416, QIP6412, QIP7232 P2, DCX3200-M P3, DCX3501-M, DCX3510-M, and DCX3600-M.[1]

---

[1] The Accused Products specifically identified in Counterclaims 7-16 are not intended to exclusively define or otherwise limit the categories of Accused Products.  These named products instead represent exemplars of the Accused Products categories set forth in each counterclaim. Apple expects that additional Accused Products will be identified during discovery, and that Motorola will introduce additional products in the future that also infringe the Asserted Patents.

190.    Upon information and belief, Motorola Mobility has infringed and continues to infringe, contributorily infringe, and/or induce infringement of one or more claims of the '560 patent, in violation of 35 U.S.C. § 271(f), by, among other things, supplying or causing to be supplied in or from the United States, without license or authority, components or products that are combined and/or used outside the United States in a manner that falls within scope of one or more claims of the '560 patent including, but not limited to, the following products:  DCT6208, DCT6416, QIP6412, QIP7232 P2, DCX3200-M P3, DCX3501-M, DCX3510-M, and DCX3600-M.

191.    Upon information and belief, infringement of the '560 patent by Motorola Mobility has been willful and deliberate.

192.    Apple has suffered, and will continue to suffer, irreparable injury as a result of Mobility's infringement.  Pursuant to 35 U.S.C. §§ 283 and 284, Apple is entitled to damages for infringement and to a permanent injunction against further infringement.

193.    This case is exceptional, and therefore, Apple is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

## EIGHTH COUNTERCLAIM – INFRINGEMENT OF U.S. PATENT NO. 5,594,509 AGAINST MOTOROLA MOBILITY

194.    Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-193 above as if fully set forth herein.

195.    Apple is the owner of the entire right, title and interest in and to U.S. Patent No. 5,594,509 ("the '509 patent") entitled "Method and Apparatus for Audio-Visual Interface for the Display of Multiple Levels of Information on a Display," which was duly and legally issued on January 14, 1997 in the name of inventors Fabrice Florin, Michael Buettner, Glenn Corey, Janey Fritsche, Peter Maresca, Peter Miller, Bill Purdy, Stuart Sharpe and Nick West.  A copy of the '509 patent is attached as Exhibit G hereto.

196.    Upon information and belief, Motorola Mobility has infringed and continues to infringe, contributorily infringe and/or induce infringement of one or more claims of the '509

patent, both directly and indirectly, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271 (a), (b), and/or (c) through the making, use, importation, offer for sale and/or sale of set-top and DVR boxes that provide or operate in conjunction with an interactive Guide (for TV or DVR functions), including, but not limited to, the following products: DCT6208, DCT6416, QIP6412, QIP7232 P2, DCX3200-M P3, DCX3501-M, DCX3510-M, and DCX3600-M.

197.    Upon information and belief, Motorola Mobility has infringed and continues to infringe, contributorily infringe and/or induce infringement of one or more claims of the '509 patent, in violation of 35 U.S.C. § 271(f), by, among other things, supplying or causing to be supplied in or from the United States, without license or authority, components or products that are combined and/or used outside the United States in a manner that falls within scope of one or more claims of the '509 patent including, but not limited to, the following products: DCT6208, DCT6416, QIP6412, QIP7232 P2, DCX3200-M P3, DCX3501-M, DCX3510-M, and DCX3600-M.

198.    Upon information and belief, infringement of the '509 patent by Motorola Mobility has been willful and deliberate.

199.    Apple has suffered, and will continue to suffer, irreparable injury as a result of Motorola Mobility's infringement.  Pursuant to 35 U.S.C. §§ 283 and 284, Apple is entitled to damages for infringement and to a permanent injunction against further infringement.

200.    This case is exceptional, and therefore, Apple is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

## NINTH COUNTERCLAIM – INFRINGEMENT OF U.S. PATENT NO. 5,621,456 AGAINST MOTOROLA MOBILITY

201.    Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-200 above as if fully set forth herein.

202.    Apple is the owner of the entire right, title and interest in and to U.S. Patent No. 5,621,456 ("the '456 patent") entitled "Methods and Apparatus for Audio-Visual Interface for

the Display of Multiple Program Categories," which was duly and legally issued on April 15, 1997 in the name of inventors Fabrice Florin, Michael Buettner, Glenn Corey, Janey Fritsche, Peter Maresca, Peter Miller, Bill Purdy, Stuart Sharpe and Nick West.  A copy of the '456 patent is attached as Exhibit H hereto.

203.    Upon information and belief, Motorola Mobility has infringed and continues to infringe, contributorily infringe and/or induce infringement of one or more claims of the '456 patent, both directly and indirectly, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271 (a), (b), and/or (c) through the making, use, importation, offer for sale and/or sale of set-top and DVR boxes that provide or operate in conjunction with an interactive Guide (for TV or DVR functions), including, but not limited to, the following products: DCT6208, DCT6416, QIP6412, QIP7232 P2, DCX3200-M P3, DCX3501-M, DCX3510-M, and DCX3600-M.

204.    Upon information and belief, Motorola Mobility has infringed and continues to infringe, contributorily infringe and/or induce infringement of one or more claims of the '456 patent, in violation of 35 U.S.C. § 271(f), by, among other things, supplying or causing to be supplied in or from the United States, without license or authority, components or products that are combined and/or used outside the United States in a manner that falls within scope of one or more claims of the '456 patent including, but not limited to, the following products: DCT6208, DCT6416, QIP6412, QIP7232 P2, DCX3200-M P3, DCX3501-M, DCX3510-M, and DCX3600-M.

205.    Upon information and belief, infringement of the '456 patent by Motorola Mobility has been willful and deliberate.

206.    Apple has suffered, and will continue to suffer, irreparable injury as a result of Motorola Mobility's infringement.  Pursuant to 35 U.S.C. §§ 283 and 284, Apple is entitled to damages for infringement and to a permanent injunction against further infringement.

207.    This case is exceptional, and therefore, Apple is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

## TENTH COUNTERCLAIM – INFRINGEMENT OF U.S. PATENT NO. 7,657,849
## AGAINST MOTOROLA MOBILITY

208.    Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-207 above as if fully set forth herein.

209.    Apple is the owner of the entire right, title and interest in and to U.S. Patent No. 7,657,849 ("the '849 patent") entitled "Unlocking a Device by Performing Gestures on an Unlock Image," which was duly and legally issued on February 2, 2010 in the name of inventors Imran Chaudhri, Bas Ording, Freddy Allen Anzures, Marcel Van Os, Stephen Lemay, Scott Forstall, and Greg Christie. A copy of the '849 patent is attached as Exhibit I hereto.

210.    Upon information and belief, Motorola Mobility has infringed and continues to infringe, contributorily infringe and/or induce infringement of one or more claims of the '849 patent, both directly and indirectly, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271 through its production, use, importation, offer for sale and/or sale of the Android software platform and mobile devices including that platform and having slide-to-answer and/or slide-to-unlock functionality. Exemplary products comprising this functionality include the following: all devices based on the Android platform, including the XPRT, Titanium, Admiral, Droid Bionic, Droid 3, Droid X2, Photon, Triumph, Electrify, Droid 4, Droid RAZR, Droid RAZR MAXX, Atrix 2, and Droid XYBOARD (both 10.1 inch and 8.2 inch tablets).

211.    Upon information and belief, infringement of the '849 patent by Motorola Mobility has been willful and deliberate.

212.    Apple has suffered, and will continue to suffer, irreparable injury as a result of Motorola Mobility's infringement. Pursuant to 35 U.S.C. §§ 283 and 284, Apple is entitled to damages for infringement and to a permanent injunction against further infringement.

213.    This case is exceptional, and therefore, Apple is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

**ELEVENTH COUNTERCLAIM – INFRINGEMENT OF U.S. PATENT NO. 8,046,721**

**AGAINST MOTOROLA MOBILITY AND HTC**

214.   Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-213 above as if fully set forth herein.

215.   Apple is the owner of the entire right, title and interest in and to U.S. Patent No. 8,046,721 ("the '721 patent") entitled "Unlocking a Device by Performing Gestures on an Unlock Image," which was duly and legally issued on October 25, 2011 in the name of inventors Imran Chaudhri, Bas Ording, Freddy Allen Anzures, Marcel Van Os, Stephen Lemay, Scott Forstall, and Greg Christie.  A copy of the '721 patent is attached as Exhibit J hereto.

216.   Upon information and belief, Motorola Mobility and HTC have infringed and continue to infringe, contributorily infringe and/or induce infringement of one or more claims of the '721 patent, both directly and indirectly, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271 through their production, use, importation, offer for sale and/or sale of the Android software platform and mobile devices including that platform and having slide-to-answer and/or slide-to-unlock functionality.  Exemplary products comprising this functionality include the following: for Motorola Mobility, all devices based on the Android platform, including the Atrix, Backflip, Bravo, Charm, Citrus, Cliq, Cliq 2, Cliq XT, Defy, Devour, Droid, Droid 2, Droid 2 Global, Droid Pro, Droid X, Flipout, Flipside, i1, Xoom, XPRT, Titanium, Admiral, Droid Bionic, Droid 3, Droid X2, Photon, Triumph, Electrify, Droid 4, Droid RAZR, Droid RAZR MAXX, Atrix 2, and Droid XYBOARD (both 10.1 inch and 8.2 inch tablets); and for HTC, all devices based on the Android platform, including the Amaze, Droid Incredible 2, EVO 3D,[2] Evo 4G, Evo Shift 4G, Evo Design 4G, Hero, Inspire 4G, Incredible S, Merge, Rezound, Rhyme, Sensation 4G, Sensation XE, Thunderbolt, Vivid, T-Mobile G2, T-Mobile myTouch 3G, T-Mobile myTouch 4G, Wildfire, Wildfire S, and Flyer.

---

[2] HTC frequently makes, sells, and offers for sale several devices with variants on the same name, such as "EVO 3D," "EVO 4G," etc.  The listing of certain variants here is not intended to exclude other variants, but rather is specifically intended to capture all variants of the models listed herein.

217.    Upon information and belief, infringement of the '721 patent by Motorola Mobility and HTC has been willful and deliberate.

218.    Apple has suffered, and will continue to suffer, irreparable injury as a result of Motorola Mobility's and HTC's infringement.  Pursuant to 35 U.S.C. §§ 283 and 284, Apple is entitled to damages for infringement and to a permanent injunction against further infringement.

219.    This case is exceptional, and therefore, Apple is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

**TWELFTH COUNTERCLAIM – INFRINGEMENT OF U.S. PATENT NO. 7,853,891 AGAINST MOTOROLA MOBILITY AND HTC**

220.    Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-219 above as if fully set forth herein.

221.    Apple is the owner of the entire right, title and interest in and to U.S. Patent No. 7,853,891 ("the '891 patent") entitled "Method and Apparatus for Displaying a Window for a User Interface," which was duly and legally issued on December 14, 2010 in the name of inventors Imran Chaudri and Bas Ording.  A copy of the '891 patent is attached as Exhibit K hereto.

222.    Upon information and belief, Motorola Mobility and HTC have infringed and continue to infringe, contributorily infringe and/or induce infringement of one or more claims of the '891 patent, both directly and indirectly, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271 through their production, use, importation, offer for sale and/or sale of the Android software platform, including the Toast class, and mobile devices including that platform and class or providing pop-up messages such as volume control indications.  Exemplary products comprising this functionality include without limitation the following: for Motorola Mobility, all devices based on the Android software platform, including the Atrix, Backflip, Bravo, Charm, Citrus, Cliq, Cliq 2, Cliq XT, Defy, Devour, Droid, Droid 2, Droid 2 Global, Droid Pro, Droid X, Flipout, Flipside, i1, Xoom, XPRT, Titanium, Admiral, Droid Bionic, Droid 3, Droid X2, Photon, Triumph, Electrify, Droid 4, Droid RAZR, Droid RAZR MAXX, Atrix 2,

and Droid XYBOARD (both 10.1 inch and 8.2 inch tablets); and for HTC, all devices based on the Android software platform, including for example the Amaze, Droid Incredible 2, EVO 3D, Evo 4G, Evo Shift 4G, Evo Design 4G, Hero, Inspire 4G, Incredible S, Merge, Rezound, Rhyme, Sensation 4G, Sensation XE, Thunderbolt, Vivid, T-Mobile G2, T-Mobile myTouch 3G, T-Mobile myTouch 4G, Wildfire, Wildfire S, and Flyer.

223.    Upon information and belief, infringement of the '891 patent by Motorola Mobility and HTC has been willful and deliberate.

224.    Apple has suffered, and will continue to suffer, irreparable injury as a result of Motorola Mobility's and HTC's infringement.  Pursuant to 35 U.S.C. §§ 283 and 284, Apple is entitled to damages for infringement and to a permanent injunction against further infringement.

225.    This case is exceptional, and therefore, Apple is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

## THIRTEENTH COUNTERCLAIM – INFRINGEMENT OF U.S. PATENT NO. 8,014,760 AGAINST MOTOROLA MOBILITY AND HTC

226.    Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-225 above as if fully set forth herein.

227.    Apple is the owner of the entire right, title and interest in and to U.S. Patent No. 8,014,760 ("the '760 patent") entitled "Missed Telephone Call Management for a Portable Multifunction Device," which was duly and legally issued on September 6, 2011 in the name of inventors Scott Forstall, Greg Christie, Scott Herz, Imran Chaudhri, Michael Matas, Marcel Van Os, and Stephen Lemay.  A copy of the '760 patent is attached as Exhibit L hereto.

228.    Upon information and belief, Motorola Mobility and HTC have infringed and continue to infringe, contributorily infringe and/or induce infringement of one or more claims of the '760 patent, both directly and indirectly, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271 through their production, use, importation, offer for sale and/or sale of the Android software platform and mobile devices including that platform and having a graphical user interface to provide information about a user's recent calls, including missed calls.

Exemplary products comprising this functionality include without limitation: for Motorola Mobility, all devices running the Android software platform and having telephone functionality, including the Atrix, Bravo, Charm, Citrus, Cliq 2, Defy, Droid, Droid 2, Droid 2 Global, Droid Pro, Droid X, Flipout, Flipside, XPRT, i1, Titanium, Admiral, Droid Bionic, Droid 3, Droid X2, Photon, Triumph, Electrify, Droid 4, Droid RAZR, Droid RAZR MAXX, and Atrix 2; and for HTC, all devices running the Android software platform and having telephone functionality, including for example the Amaze, Droid Incredible 2, EVO 3D, Evo 4G, Evo Shift 4G, Evo Design 4G, Hero, Inspire 4G, Incredible S, Merge, Rezound, Rhyme, Sensation 4G, Sensation XE, Thunderbolt, Vivid, T-Mobile G2, T-Mobile myTouch 3G, T-Mobile myTouch 4G, Wildfire, and Wildfire S.

229.     Upon information and belief, infringement of the '760 patent by Motorola Mobility and HTC has been willful and deliberate.

230.     Apple has suffered, and will continue to suffer, irreparable injury as a result of Motorola Mobility's and HTC's infringement.  Pursuant to 35 U.S.C. §§ 283 and 284, Apple is entitled to damages for infringement and to a permanent injunction against further infringement.

231.     This case is exceptional, and therefore, Apple is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

**FOURTEENTH COUNTERCLAIM – INFRINGEMENT OF U.S. PATENT NO. 8,031,050 AGAINST MOTOROLA MOBILITY AND HTC**

232.     Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-231 above as if fully set forth herein.

233.     Apple is the owner of the entire right, title and interest in and to U.S. Patent No. 8,031,050 ("the '050 patent") entitled "System and Method for Situational Location Relevant Invocable Speed Reference," which was duly and legally issued on October 4, 2011 in the name of inventor William Johnson.  A copy of the '050 patent is attached as Exhibit M hereto.

234.     Upon information and belief, Motorola Mobility and HTC have infringed and continue to infringe, contributorily infringe and/or induce infringement of one or more claims of

41

the '050 patent, both directly and indirectly, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271 through their production, use, importation, offer for sale and/or sale of the Android software platform and mobile devices including that platform and applications, such as the Maps application, for providing location-dependent information including phone numbers to a user.  Exemplary products comprising this functionality include without limitation: for Motorola Mobility, all devices running the Android software platform and having telephone functionality, including the Atrix, Backflip, Bravo, Charm, Citrus, Cliq, Cliq 2, Cliq XT, Defy, Devour, Droid, Droid 2, Droid 2 Global, Droid Pro, Droid X, Flipout, Flipside, i1, Xoom, XPRT, Titanium, Admiral, Droid Bionic, Droid 3, Droid X2, Photon, Triumph, Electrify, Droid 4, Droid RAZR, Droid RAZR MAXX, Atrix 2, and Droid XYBOARD (both 10.1 inch and 8.2 inch tablets); and for HTC, all devices running the Android software platform and having telephone functionality, including for example the Amaze, Droid Incredible 2, EVO 3D, Evo 4G, Evo Shift 4G, Evo Design 4G, Hero, Inspire 4G, Incredible S, Merge, Rezound, Rhyme, Sensation 4G, Sensation XE, Thunderbolt, Vivid, T-Mobile G2, T-Mobile myTouch 3G, T-Mobile myTouch 4G, Wildfire, and Wildfire S.

235.    Upon information and belief, infringement of the '050 patent by Motorola Mobility and HTC has been willful and deliberate.

236.    Apple has suffered, and will continue to suffer, irreparable injury as a result of Motorola Mobility's and HTC's infringement.  Pursuant to 35 U.S.C. §§ 283 and 284, Apple is entitled to damages for infringement and to a permanent injunction against further infringement.

237.    This case is exceptional, and therefore, Apple is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

## FIFTEENTH COUNTERCLAIM – INFRINGEMENT OF U.S. PATENT NO. 8,074,172 AGAINST MOTOROLA MOBILITY AND HTC

238.    Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-238 above as if fully set forth herein.

239.    Apple is the owner of the entire right, title and interest in and to U.S. Patent No.

8,074,172 ("the '172 patent") entitled "Method, System, and Graphical User Interface for Providing Word Recommendations," which was duly and legally issued on December 6, 2011, in the name of inventors Kenneth Kocienda and Bas Ording.  A copy of the '172 patent is attached as Exhibit N hereto.

240.    Upon information and belief, Motorola Mobility and HTC have infringed and continue to infringe, contributorily infringe and/or induce infringement of one or more claims of the '172 patent, both directly and indirectly, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271 through their production, use, importation, offer for sale and/or sale of the Android software platform and mobile devices including that platform and having a user interface for providing word recommendations and text autocorrections in connection with typed text.  Exemplary products comprising this functionality include without limitation: for Motorola Mobility, all devices running the Android software platform, including the Atrix, Backflip, Bravo, Charm, Citrus, Cliq, Cliq 2, Cliq XT, Defy, Devour, Droid, Droid 2, Droid 2 Global, Droid Pro, Droid X, Flipout, Flipside, i1, Xoom, XPRT, Titanium, Admiral, Droid Bionic, Droid 3, Droid X2, Photon, Triumph, Electrify, Droid 4, Droid RAZR, Droid RAZR MAXX, Atrix 2, and Droid XYBOARD (both 10.1 inch and 8.2 inch tablets); and for HTC, all devices running the Android software platform, including for example the Amaze, Droid Incredible 2, EVO 3D, Evo 4G, Evo Shift 4G, Evo Design 4G, Hero, Inspire 4G, Incredible S, Merge, Rezound, Rhyme, Sensation 4G, Sensation XE, Thunderbolt, Vivid, T-Mobile G2, T-Mobile myTouch 3G, T-Mobile myTouch 4G, Wildfire, Wildfire S, and Flyer.

241.    Upon information and belief, infringement of the '760 patent by Motorola Mobility and HTC has been willful and deliberate.

242.    Apple has suffered, and will continue to suffer, irreparable injury as a result of Motorola Mobility's and HTC's infringement.  Pursuant to 35 U.S.C. §§ 283 and 284, Apple is entitled to damages for infringement and to a permanent injunction against further infringement.

243.    This case is exceptional, and therefore, Apple is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

**SIXTEENTH COUNTERCLAIM – INFRINGEMENT OF U.S. PATENT NO. 8,099,332**

**AGAINST MOTOROLA MOBILITY AND HTC**

244.     Apple incorporates herein by reference the answers and allegations set forth in Paragraphs 1-243 above as if fully set forth herein.

245.     Apple is the owner of the entire right, title and interest in and to U.S. Patent No. 8,099,332 ("the '332 patent") entitled "User Interface for Application Management for a Mobile Device," which was duly and legally issued on January 17, 2012, in the name of inventors Steve Lemay and Sean Kelly.  A copy of the '332 patent is attached as Exhibit O hereto.

246.     Upon information and belief, Motorola Mobility and HTC have infringed and continue to infringe, contributorily infringe and/or induce infringement of one or more claims of the '332 patent, both directly and indirectly, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271 through their production, use, importation, offer for sale and/or sale of the Android software platform and mobile devices including that platform and having the Android Market or Google Play application installed thereon.  Exemplary products comprising this functionality include without limitation: for Motorola Mobility, all devices running the Android software platform, including the Atrix, Backflip, Bravo, Charm, Citrus, Cliq, Cliq 2, Cliq XT, Defy, Devour, Droid, Droid 2, Droid 2 Global, Droid Pro, Droid X, Flipout, Flipside, i1, Xoom, XPRT, Titanium, Admiral, Droid Bionic, Droid 3, Droid X2, Photon, Triumph, Electrify, Droid 4, Droid RAZR, Droid RAZR MAXX, Atrix 2, and Droid XYBOARD (both 10.1 inch and 8.2 inch tablets); and for HTC, all devices running the Android software platform, including for example the Amaze, Droid Incredible 2, EVO 3D, Evo 4G, Evo Shift 4G, Evo Design 4G, Hero, Inspire 4G, Incredible S, Merge, Rezound, Rhyme, Sensation 4G, Sensation XE, Thunderbolt, Vivid, T-Mobile G2, T-Mobile myTouch 3G, T-Mobile myTouch 4G, Wildfire, Wildfire S, and Flyer.

247.     Upon information and belief, infringement of the '332 patent by Motorola Mobility and HTC has been willful and deliberate.

248.     Apple has suffered, and will continue to suffer, irreparable injury as a result of

Motorola Mobility's and HTC's infringement.  Pursuant to 35 U.S.C. §§ 283 and 284, Apple is entitled to damages for infringement and to a permanent injunction against further infringement.

249.     This case is exceptional, and therefore, Apple is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

## DEMAND FOR JURY TRIAL

250.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Apple demands a jury trial for all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Apple prays for judgment as follows on Motorola Mobility's Complaint and on Apple's Answer, Affirmative Defenses and Counterclaims:

A.     That each and every claim of the '987 patent, the '119 patent, the '006 patent, the '737 patent, the '531 patent and the '161 patent be declared not infringed and invalid;

B.     That each and every claim of the '006 patent be declared unenforceable;

C.     That Motorola Mobility take nothing by its Complaint and that Motorola Mobility's Complaint be dismissed with prejudice;

D.     That judgment be entered in favor of Apple against Motorola Mobility on Motorola Mobility's Complaint;

E.     That Motorola Mobility be declared to have infringed, directly and/or indirectly, literally or under the doctrine of equivalents, the '560 patent, the '509 patent, the '456 patent, and the '849 patent, under 35 U.S.C. § 271;

F.     That Motorola Mobility and HTC be declared to have infringed, directly and/or indirectly, literally or under the doctrine of equivalents, the '721 patent, the '891 patent, the '760 patent, the '050 patent, the '172 patent, and the '332 patent under 35 U.S.C. § 271;

G.     That Apple be awarded damages for Motorola Mobility's and HTC's infringement under 35 U.S.C. § 284, in an amount to be determined at trial, but in no event less

than a reasonable royalty for said infringement, or Apple's lost profits resulting
therefrom;

H.   That Motorola Mobility be permanently enjoined under 35 U.S.C. § 283 from
infringing the '560 patent, the '509 patent, the '456 patent, and the'849 patent,
and that Motorola Mobility and HTC be permanently enjoined under 35 U.S.C.
§ 283 from infringing the '721 patent, the '891 patent, the '760 patent, the '050
patent, the '172 patent, and the '332 patent;

I.   That pursuant to 35 U.S.C. § 285 and/or other applicable laws, Motorola
Mobility's, and/or HTC's conduct be found to render this an exceptional case and
that Apple be awarded its attorneys' fees incurred in connection with this action;

J.   That Apple be awarded its cost of suit incurred herein;

K.   That Apple be awarded such other and further relief as the court may deem just
and proper.


Dated: March 12, 2012                         Respectfully submitted,

                                              */s/ Christopher R. J. Pace*
                                              Christopher R. J. Pace
                                              christopher.pace@weil.com
                                              Edward Soto
                                              edward.soto@weil.com
                                              WEIL, GOTSHAL & MANGES LLP
                                              1395 Brickell Avenue, Suite 1200
                                              Miami, FL 33131
                                              Telephone: (305) 577-3100
                                              Facsimile: (305) 374-7159

                                              *Attorneys for Apple Inc.*
*Of Counsel:*                                 Robert T. Haslam*
Matthew D. Powers*                            rhaslam@cov.com
Matthew.Powers@tensegritylawgroup.com         COVINGTON & BURLING LLP
Steven Cherensky*                             333 Twin Dolphin Drive, Suite 700
Steven.Cherensky@tensegritylawgroup.com       Redwood Shores, CA 94065
Tensegrity Law Group LLP                      Telephone:  (650) 632-4700
201 Redwood Shores Parkway                    Facsimile:  (650) 632-4800
Redwood Shores, CA 94065
Telephone:  650-802-6000
Facsimile: 650-802-6001

Mark G. Davis*
mark.davis@weil.com
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W., Suite 900
Washington, DC 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

Anne M. Cappella*
anne.cappella@weil.com
Jill J. Ho*
jill.ho@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
Kenneth H. Bridges*
kbridges@bridgesmav.com
Michael T. Pieja*
mpieja@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square
Palo Alto, CA 94306
(650) 804-7800

Robert D. Fram*
rfram@cov.com
Christine Saunders Haskett*
chaskett@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

*Pro hac vice applications to be filed*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 12, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

 */s/ Christopher R. J. Pace*
Christopher R. J. Pace (Fla. Bar No. 0721166)

**SERVICE LIST**
**Motorola Mobility, Inc. versus Apple Inc.**
**Case No. 1:12-cv-20271-KMM**
**United States District Court, Southern District of Florida**

Edward M. Mullins
Fla. Bar No. 863920
emullins@astidavis.com
ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.
701 Brickell Avenue, 16th Floor
Miami, FL 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202

*Of Counsel:*
Charles K. Verhoeven
David A. Perlson
Anthony Pastor
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 93111
(415) 875-6600

Raymond N. Nimrod
Edward J. DeFranco
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

David A. Nelson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, IL 60661
(312) 705-7400

Moto-Apple-SDFL@quinnemanuel.com

*Attorneys for Motorola Mobility, Inc. and Motorola, Inc.*
Electronically served via email