## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., | |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | Case No. 1:12-cv-01004-GMS |
| HTC CORPORATION, HTC AMERICA, INC., ONE & COMPANY DESIGN, INC., and HTC AMERICA INNOVATION INC. | |
| Defendants, | |
| and related counterclaims. | |

## <u>APPLE'S ANSWERING BRIEF IN OPPOSITION TO HTC'S MOTION TO STAY</u>

OF COUNSEL

Michael T. Pieja
Christopher Lubeck
Lawrence Lien
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
(650) 804-7800
mpieja@bridgesmav.com
clubeck@bridgesmav.com
llien@bridgesmav.com

Aaron Taggart
BRIDGES & MAVRAKAKIS LLP
180 N LaSalle, Suite 2215
Chicago, IL 60601
(312) 216-1620
ataggart@bridgesmav.com

Dated:  October 1, 2012

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

*Attorneys for Apple Inc.*

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................................................1

II.   NATURE AND STAGE OF THE PROCEEDINGS .....................................................3

III.  SUMMARY OF ARGUMENT .....................................................................................4

IV.   STATEMENT OF FACTS ...............................................................................................5

V.    ARGUMENT ...................................................................................................................7

      A.   Because Apple And HTC Are Direct Competitors And a Stay
          Would Essentially Bar Apple From Seeking Any Relief in
          Any District Court Against HTC Until 2014, While HTC
          Remains Free to Prosecute Its Own Suits, Apple Would be
          Significantly Prejudiced By a Stay. ...............................................................7

      B.   A Stay Will Complicate, Not Simplify, The Issues in Question
          and the Trial of the Case. .............................................................................11

            1.   This Case Has No Significant Overlap With the ITC
                Investigation That Is the Basis for the Stay in the
                2010 Cases. ....................................................................................11

            2.   Staying This Case Is Inefficient Because It Would
                Require a Logjam of Five Patent Cases and Over 30
                Patents To Be Litigated At Once Upon Expiration of
                the Stay And Would Frustrate The Parties' Ability to
                Reach a Timely Resolution of Their Dispute. ...................................15

      C.   HTC's Argument That the Case Is in its Early Stages Should be
          Given No Weight Because HTC Has Refused to Adhere to
          the Case Schedule or to Respond to Discovery. ...........................................17

      D.   HTC's Proposed Stay is Inconsistent With the Case
          Management Approaches Taken By Other District Courts
          Confronted With Similarly Complex Matters...............................................18

VI.   CONCLUSION ...............................................................................................................20

## TABLE OF AUTHORITIES

## CASES

*Boston Scientific Corp. v. Cordis Corp.*,
    777 F. Supp.2d 783 (D. Del. 2011)........................................................................ 4, 7

*Cherokee Nation v. United States*,
    124 F.3d 1413 (Fed. Cir. 1997.)........................................................................... 4, 7

*Clinton v. Jones,*
    520 U.S. 681 (1997).............................................................................................. 4, 7

*FormFactor Inc. v. Micronics Japan Co., Ltd.,*
    2008 U.S. Dist. LEXIS 13114 (N.D. Cal. Feb. 11, 2008) ................................ 14

*HumanscaleCorp. v. Compx Int'l Inc.*,
    2009 U.S. Dist. LEXIS 43267 (E.D. Va. May 21, 2009) ................................. 12

*Kahn v. General Motors Co.*,
    889 F.2d 1078 (Fed. Cir. 1997)............................................................................... 7

*LG Elec., Inc. v. Eastman Kodak Co*.,
    2009 U.S. Dist. LEXIS 44056 (S.D. Cal. May 26, 2009).......................... 12, 13

*Organon Teknika Corp. v. Hoffmann-La Roche, Inc.*,
    1997 U.S. Dist LEXIS 3798 (M.D.N.C. Feb. 19, 1997)................................... 12

*Polymer Techs., Inc. v. Bridwell*,
    103 F.3d 970 (Fed. Cir. 1996)............................................................................... 11

*Robert Bosch LLC v. Pylon Mfg. Co.*,
    659 F.3d 1142 (Fed. Cir. 2011.)........................................................................... 10

*SanDisk Corp. v. Phison Electronics Corp*.,
    538 F. Supp.2d 1060 (W.D. Wis. 2008) ...................................................... 12, 14

## TREATISES

17-112 Moore's Federal Practice – Civil § 111.06....................................................... 17

## I.      INTRODUCTION

HTC's stay motion effectively asks the Court to impose a complete, four-year bar on Apple's use of the federal courts to protect its intellectual property against misuse by HTC in products that compete directly with Apple's iconic iPhone and iPad.  This is an extraordinary request that would, if granted, be highly prejudicial to Apple, inefficient, and profoundly different from the approaches taken by other courts to similar litigations.  HTC's motion should therefore be denied.

As an initial matter, a stay would be manifestly prejudicial to Apple.  HTC and Apple are direct competitors: Apple's iPhone and the accused products are regularly compared side by side in the industry press and by consumers.  Apple's claims here involve intellectual property that covers well-known, commercially successful features of the iPhone and that HTC has misappropriated in order to position its own Android smartphones as iPhone competitors. Moreover, the pace and scope of HTC's infringement weigh heavily against a stay: since Apple first began attempting to enforce its patent rights against HTC two years ago, HTC has introduced twenty new infringing products using a half-dozen versions of the accused Android software.  And it has added new, infringing features to its broader "ecosystem" – including application and media stores – to attempt to tie customers to its products for the long term.  The possibility of damages at some unspecified, post-stay, future date cannot compensate for the threat to Apple's customer base and ecosystem from HTC's infringement today.

The prejudice to Apple from HTC's stay request is compounded because HTC asks the Court to treat Apple and HTC very differently.  While HTC complains that this case must be stayed because of an unrelated ITC investigation, it has had no reservations about proceeding against Apple with its own ITC investigations in parallel with its own cases before this Court.

1

When it comes to Apple, in contrast, HTC's position is that Apple should not be allowed to counterclaim in the case HTC brought in this Court, should not be allowed to proceed with its prior cases in this Court, and should not be allowed to proceed with cases (such as this one) filed in other jurisdictions on different patents. This complete and asymmetric ban on Apple's efforts to enforce its patent rights against HTC would, if granted, significantly prejudice Apple.

Prejudice aside, HTC's stay request is also inefficient. HTC's transfer-and-stay strategy treats this Court as a dumping ground for Apple's offensive cases, and would generate a huge backlog of thirty separate patent claims before the Court that would be unstayed simultaneously sometime in 2014. Moreover, HTC's approach guarantees that the parties will not receive the Court's guidance on the merits of their claims for years, a setback to the parties' efforts to resolve the matters. Although HTC claims that efficiency would be harmed by proceeding here while an ITC investigation is pending on unrelated patents, that is false. The issues and technologies in the two disputes do not meaningfully overlap. And none of the patents in this case shares a specification, prosecution history, or priority claim with any patent in the ITC investigation. HTC's purported "efficiencies" from a stay have been manufactured solely to justify delay.

Finally, Apple respectfully notes that HTC's argument that it is somehow inefficient or inappropriate for this case to proceed before Apple's ITC investigation concludes is inconsistent with the experiences of other district courts. Apple's pending litigations with Motorola and Samsung, filed after Apple's initial suit against HTC, each involved the same accused Android software, and each involved simultaneous district court and ITC cases. The judges presiding over those cases moved them forward expeditiously, and brought them to judgment this year. Apple respectfully requests that this Court proceed similarly, and deny HTC's motion.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

This case is Apple's latest effort to seek injunctive and monetary relief for HTC's ongoing misuse of Apple's intellectual property.  Apple asserts that HTC infringes six patents by selling smartphones based on the Android software platform, and by using the Android software itself.  The patents in suit cover features of Apple's iconic iPhone and iPad products.  For instance, the patents cover the interface for Apple's "App Store," which allows users to purchase applications to use on their devices, as well as features that allow users to receive information tailored to the user's location, such as phone numbers of nearby businesses, to track missed calls, and to automatically accept corrections for misspelled words. (D.I. 27, L, M, N, O.)

Apple's claims against HTC were filed on March 12, 2012 in the Southern District of Florida.  (D.I. 27.)  The presiding judge, Judge Scola, ordered the parties to submit proposed schedules and, on May 14, entered a scheduling order based in large part on HTC's proposal. (Exs. 2-3.)[1]  Under the May 14 order, infringement contentions were due on September 7 and invalidity contentions on October 5.  (Ex. 3.)  The parties proceeded under the May 14 Order for four months and agreed to a protective order.   (D.I. 113, D.I. 114.)  Apple has served two sets of requests for production and two sets of interrogatories on HTC, seeking basic information about the accused functionalities. (D.I. 127, Exs. 4-5)

In June and July, HTC moved to sever the claims against it and transfer them to this Court.  Although Judge Scola granted these motions, he did not vacate the contentions deadline or any other deadlines.  (D.I. 116.) Thus, on September 7, in accordance with the May 14 Order, Apple served its infringement contentions, including detailed claim charts.  (Ex. 7.)  Although

---

[1] All references herein to "Ex. ---" refer to the Exhibits to the Declaration of Michael T. Pieja, submitted concurrently herewith.

HTC had asserted patent counterclaims against Apple, HTC did not serve its own contentions and has informed Apple that it will not comply with the May 14 order.  Similarly, Apple has served requests for production of documents, to which HTC's responses were due on August 16, a month and a half ago.  HTC has not produced any documents, and Apple will be seeking relief from the Court for HTC's refusal to follow Judge Scola's prior orders and to produce discovery in a timely manner.

## III.    SUMMARY OF ARGUMENT

1.   Courts have a "paramount obligation to exercise jurisdiction timely in cases properly before [them]." *Cherokee Nation v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997).  Stays of litigation are thus the exception, not the rule, and the burden is on the party seeking a stay to show that it is justified.  *See Clinton v. Jones,* 520 U.S. 681, 708 (1997).

2.   In weighing whether a party seeking a stay has met its burden, courts typically consider (1) whether a stay would present a clear tactical disadvantage or prejudice to the non-moving party; (2) whether a stay will simplify the issues for trial; and (3) the stage of the proceedings, including whether discovery is complete and a trial date set.  *See Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp.2d 783, 788 (D. Del. 2011).

3.   Here, Apple will be prejudiced by a stay, as HTC is a direct competitor and is continuously introducing new infringing products that threaten Apple's market share and customer base.  HTC's stay request would essentially slam the door on the federal courts to Apple until 2014, while permitting HTC to pursue its own federal claims against Apple: a manifestly prejudicial result.

4.   A stay would also not simplify the issues.  None of the patents at issue here shares a specification, prosecution history, or priority claim with any patent at issue in the pending ITC investigation.  There is also no particular technical connection between the patents

at issue here and the bulk of those at issue in other cases between the parties. In addition, a stay would inefficiently queue up five cases and 32 patents to be unstayed simultaneously.

        5.  HTC's protests that the case is at an early stage and no significant discovery has occurred should be given little or no weight, because they are a result of HTC's own refusal to respond to discovery or to follow the pre-existing case schedule.

## IV.   STATEMENT OF FACTS

Apple's claims against HTC here parallel certain of its claims against a different competitor – Motorola.  Since October 2010, Apple and Motorola have been involved in litigation in several venues relating to Motorola smartphones that are based on the Android software platform.  Among these litigations are two cases, filed by Motorola in 2010 and 2012, in the Southern District of Florida.  (Ex. 8; D.I. 1.)

HTC and Motorola both sell smartphones that use the same software and many of the same prebuilt applications – for instance the Google Play Store and Google Maps applications, which infringe the '332 and '050 patents at issue in this case, and the Android software itself, which infringes the remaining four patents asserted here.  (D.I. 27 at ¶¶ 216, 222, 228, 234, 240, 246.)  In view of this overlap, Apple intended to assert infringement of the six patents at issue here by both HTC and Motorola.  None of the six patents Apple intended to assert as counterclaims against Motorola and HTC was or is at issue in any other proceeding between Apple and HTC, whether in this Court or in the ITC.

Because of the overlap between its claims against HTC and Motorola, Apple joined HTC as a counterclaim defendant in the Southern District of Florida.  (D.I. 27.)  Several months later, HTC moved to sever the claims against it and transfer them to this Court, arguing that it would be more "efficient" for this Court to separately adjudicate them.  The Florida court granted HTC's motion on July 31, 2012, but did not vacate its prior schedule.  (D.I. 116.)

As HTC has noted, several other cases between the parties are pending before this Court. On March 2, 2010, Apple filed three cases against HTC – a case in the International Trade Commission ("ITC") (Inv. No. 337-TA-710), a companion case in this Court (No. 10-CV-0166 ("the 166 case")), and a separate, non-overlapping case in this Court (No. 10-CV-0167 ("the 167 case")). The patents in the 166 case relate generally to low-level software architectures used in the accused devices, while those in the 167 case encompass technologies including user interfaces, cellular receivers, processor power control, and digital cameras. On June 21, 2010, Apple filed a third case in this Court (No. 10-CV-0544 ("the 544 case")) to reassert two patents from the 167 case for which certificates of correction had recently issued and to add two patents relating to hot-swapping of video devices.

On August 12, 2011, the ITC initiated a second investigation filed by Apple against HTC (the "797 Investigation"). One of the five patents asserted in the 797 Investigation overlapped with one of the twelve patents pending in the 167 and 544 cases. In August 2011 HTC moved for a discretionary stay of the entire 167 and 544 litigations. The Court granted HTC's motion in December 2011, and those cases remain stayed. In contrast to the 167 case that was previously stayed, none of the patents at issue in either the 710 or 797 Investigations is at issue in the present case. (*Compare* D.I. 27 with Exs. 9-10.) None of the patents at issue in either the 710 or 797 Investigations is the parent or child of any patent at issue here, nor do they share a common specification, abstract, or prosecution history with any patent at issue here.

In addition to the cases brought by Apple in this Court, HTC has filed a case against Apple in this district (No. 11-cv-785 (the "785 case")) and HTC or its wholly-owned subsidiary S3 Graphics, Inc. have filed four complaints against Apple at the ITC (Inv. Nos. 337-TA-721 337-TA-724, 337-TA-808, and 337-TA-813). Although all five of HTC's cases target the same

products, including the iPhone and iPad, the 785 case has not been stayed, and the Court has denied Apple's motion for leave to assert counterclaims against HTC in that case.   (Ex. 29.)

## V.  ARGUMENT

There is a "strong public policy favoring expeditious resolution of litigation." *Kahn v. General Motors Co.*, 889 F.2d 1078, 1080 (Fed. Cir. 1997).  As a result, the presumption is that a case will be not be stayed; the burden is on the party seeking a stay to show that it is warranted. *Clinton,* 520 U.S. at 708.   Although HTC's brief recites the factors that courts consider in determining whether a movant has met that burden, it makes little effort to apply them to the facts of the case – and with good reason, since they do not support a stay here.   Courts generally consider "(1) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage; (2) whether a stay will simplify the issues for trial; and (3) whether discovery is complete and a trial date set."   *Boston Scientific Corp.,* 777 F. Supp.2d at 788.   Here, Apple will suffer significant prejudice from a stay, a stay would make the issues for trial more, not less, complex, and the current stalled state of discovery is due to HTC's own foot-dragging.

> **A.    Because Apple And HTC Are Direct Competitors And a Stay Would Essentially Bar Apple From Seeking Any Relief in Any District Court Against HTC Until 2014, While HTC Remains Free to Prosecute Its Own Suits, Apple Would be Significantly Prejudiced By a Stay.**

The first factor a court must consider in evaluating a stay request is prejudice to the non-moving party, since a stay runs counter to the Court's "paramount obligation to exercise jurisdiction timely in cases properly before it." *Cherokee Nation*, 124 F.3d at 1416.  This factor weighs heavily against a stay here.

The prejudice to Apple from granting HTC's motion stems from its sweeping impact: as a practical matter, granting HTC's motion would result in a complete bar on Apple's efforts to

obtain *any* injunctive or monetary relief against HTC – its competitor in a fast-growing and ever-changing industry – on *any* claims in *any* federal court until at least 2014.  This case has no patents that overlap with any ITC case between Apple and HTC.  It was filed in another district, where the same patents and same accused functionalities are already in issue against another defendant (Motorola), thus offering the potential for significant efficiency gains if those cases were coordinated.  (D.I. 27.)  And *all* of the patents at issue here are so new that they had not even issued at the time the original cases pending in this district were filed.  (*Id.* at ¶¶ 215, 221, 227, 233, 239, 245; *Id.* at Exs. J-O.)  If this case is stayed, it is difficult to imagine what claims Apple could bring that HTC would *not* contend should be transferred to this Court and stayed.  And since the target date in the 797 Investigation is not until March 2013, and Federal Circuit appeals from ITC determinations typically take well over a year, any stay would likely be in place at least through the summer of 2014.  (Ex. 28.)

The impact of HTC's proposed stay is magnified by Apple and HTC's status as competitors and the nature of the industry in which they compete.  Apple's iPhone and HTC's accused Android smartphones, such as the HTC One series, are routinely described as competing devices in head-to-head comparisons in the industry press.  (*See, e.g.*, Exs. 11-13.)  And this competition extends beyond the devices themselves: Apple's iPhone and iPad and the accused HTC products are each used to access competing ecosystems of online stores, applications, and media.  As one example, the Accused HTC products use the Google Play Store and Play Music applications to purchase and download applications (such as games), music, and other media.  (*See*, *e.g,* D.I. 27 at 245-46; Ex. 7.)   These functionalities are precisely what is accused of infringing the '332 patent.  (*Id.*)  The Play Store and Music applications were released after, and compete with, Apple's pioneering App Store and iTunes Store. (*E.g.*, Exs. 14-15.)

Moreover, the smartphone industry is one in which justice delayed is truly justice denied. The industry is large and is characterized by fierce competition, short product lifecycles, and the constant introduction of new features, prompting HTC's lead counsel in the 710 Investigation, during a hearing on another Android-related case, to comment that smartphones are like "cabbage" and have a shelf life of "about six months."  (Ex. 1 at 32.)  This remark surely fits HTC: since Apple first sued HTC in March 2010, HTC has introduced twenty new smartphone models, using a half-dozen versions of Android.  (Ex. 16).  A stay would free HTC to continue this bombardment of infringing products, knowing Apple cannot seek timely relief against it in federal court, as Apple has successfully done against other competitors, such as Samsung.

HTC's requested relief is even more prejudicial because it would result in Apple's and HTC's claims being treated fundamentally differently. Lost in HTC's arguments about why "efficiency" should bar Apple from proceeding with this case and the 797 Investigation simultaneously is the fact that HTC itself has filed, and is proceeding with, simultaneous ITC and district court actions covering the same products.  HTC's 785 case, before this Court, and its 721, 724, 808, and 813 Investigations in the ITC, all target the iPhone and iPad.  Yet unlike its must-stay approach here, HTC is actively proceeding with the 785 case, even while the 808 and 813 Investigations are pending.  Indeed, as the 785 case demonstrates, HTC apparently expects this Court to consider the "efficiency" of trying patents on similar technologies only when HTC (but not Apple) raises the point.  HTC argues out of one corner of its mouth that the patents in issue here are sufficiently related to those in the 797 Investigation to warrant a stay because both cover smartphone interfaces.  (D.I. 130 at 2, 5.)  Yet, out of the other side of its mouth, HTC adamantly opposed any attempt by Apple to assert counterclaim patents in the 785 case, even though Apple's proposed counterclaims and HTC's own claims both related to smartphones.

Indeed, the asymmetry in how HTC wants the Court to treat it and Apple is underscored by the fact that, in HTC's 785 case, this Court recently denied, without comment, a *joint request* to stay the matter pending resolution of certain ownership and standing issues. (Ex. 29.)  Against this background, granting HTC's motion would essentially mean that – while HTC's own cases against Apple proceed full bore – Apple cannot assert patent counterclaims against HTC, it cannot proceed with the cases it has filed against HTC in this district, and it cannot, as it did here, file unrelated cases in other districts (since HTC will demand they be transferred here and stayed).  The prejudice to Apple from such a result is manifest.

HTC's motion makes no attempt to justify imposing this burden on Apple and instead asserts – with no citation to evidence – that Apple would not be "unduly prejudiced" because it can be made whole with money damages at an unspecified future time.  (D.I. 130 at 10.)  In addition to ignoring the real prejudice described above, HTC ignores the fact that Apple is seeking injunctive as well as monetary relief – and a two-year delay would essentially nullify Apple's right to meaningful injunctive relief.  (D.I. 27 at 45-46, Request for Relief.)  And the law is clear: threats to market share in cases between competitors comprise serious harm that cannot be remedied by future damages alone and may require injunctive relief.  For instance, in *Robert Bosch LLC v. Pylon Mfg. Co.*, the Federal Circuit found that a district court had abused its discretion by finding that a patentee was not suffering irreparable harm from ongoing infringement, relying specifically on "the parties' direct competition" and the patentee's "loss in market share and access to potential customers" due to the defendant's infringement.  *Robert Bosch LLC v. Pylon Mfg. Co.*, 659 F.3d 1142, 1150-51 (Fed. Cir. 2011).   Although the district court in *Bosch* apparently believed – as HTC urges – that this type of harm could be remedied by money damages alone, the Federal Circuit found that this was a "clear error of judgment." *Id.*

Indeed, the Federal Circuit has explained why the harm in a case like this is so difficult to repair: "[y]ears after infringement has begun, it may be impossible to restore a patentee's . . . exclusive position by an award of damages . . . Customers may have established relationships with infringers." *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996).  Here, as in *Bosch* and *Polymer Techs.*, Apple and HTC are competitors, and HTC's infringement threatens Apple's market share and customer relations.  (*E.g.*, Exs. 11-15.)  Far-off future damages cannot make Apple whole from the prejudice a stay would bring; HTC's motion should thus be denied.[2]

### B.     A Stay Will Complicate, Not Simplify, The Issues in Question and the Trial of the Case.

The second stay factor – whether a stay will simplify the issues and promote efficiency – also weighs against HTC's motion, for two reasons: (1) there is no meaningful overlap between this case and the 797 Investigation; and (2) HTC's proposed stay would create an immense and inefficient backlog of patent claims on this Court's docket, and would forego numerous efficiencies from addressing some or all of Apple's claims now.

### 1.     This Case Has No Significant Overlap With the ITC Investigation That Is the Basis for the Stay in the 2010 Cases.

HTC's claims that an overlap between this case and other litigations between Apple and HTC supports a stay are wrong both legally and factually.  In view of the "strong public policy

---

[2] HTC has previously suggested that Apple will not be prejudiced because Apple can file more ITC investigations against HTC if it wants a case to proceed.  This is specious, given that HTC itself is proceeding simultaneously with suits against Apple in the ITC and in this Court, suggesting that it recognizes the unique role played by each forum.  (*See* Ex. 17.)  Moreover, ITC investigations are subject to significant limitations that are not present in district court, such as the importation and domestic industry requirements.  And ITC proceedings provide no opportunity whatsoever for monetary remedies or jury trials, critical features of a district court forum.  Crucially, HTC does not cite – and Apple is not aware of – any authority that suggests that the availability of an ITC forum for certain claims deprives Apple of its right to seek redress in the federal district courts for different instances of HTC's infringement.

favoring expeditious resolution of litigation," stays of litigation are disfavored. *Kahn*, 889 F.2d at 1080. Discretionary stays of patents that are not asserted in a co-pending ITC action are rare, and courts have required that the party seeking the stay show "evidence of a substantial overlap" and "how the outcome of the ITC claim will have an effect on this case." *Organon Teknika Corp. v. Hoffmann-La Roche, Inc.*, 1997 U.S. Dist LEXIS 3798 at *8 (M.D.N.C. Feb. 19, 1997) (denying motion to stay with respect to patents that overlapped technically with patents in ITC case, but were not themselves asserted in the ITC). In reality, such stays are limited to cases in which a district court case involves a patent in the same family – sharing the same prosecution history or specification – as an ITC patent. Tellingly, HTC's slender authority relies on just this sort of relationship. *See SanDisk Corp. v. Phison Electronics Corp.*, 538 F. Supp.2d 1060, 1063-64 (W.D. Wis. 2008) (specifically noting that several patents in the district court were in the same family as the ITC patents, and "share a prosecution history," "share a specification," and "share certain claim terms").

In contrast, where district court and ITC patents merely share a "common technology" (as HTC asserts here), courts have almost universally rejected stays. For instance, in *HumanscaleCorp. v. Compx Int'l Inc.*, 2009 U.S. Dist. LEXIS 43267, *3-5 (E.D. Va. May 21, 2009) the court denied a motion to stay litigation regarding patents that supposedly shared the same technology as a patent asserted in a parallel ITC proceeding. Although both sets of patents related to the same subject matter – keyboard support systems — the court ruled that supposed "efficiencies" did not warrant a stay since the counterclaim patents did not share a specification, prosecution history, or familial relationship with the ITC patent. *Id.* at *3-4. Similarly, in *LG Elec., Inc. v. Eastman Kodak Co.*, 2009 U.S. Dist. LEXIS 44056 (S.D. Cal. May 26, 2009), the court denied the defendant's stay motion, even though the patents to be stayed involved the same

accused devices and technologies as patents in a pending ITC case.  In doing so, the court noted that, among other things, the non-ITC district court patents did not share a specification or familial relationship with an ITC patent.  *Id* at *4.

Here, HTC has shown neither substantial overlap nor reasons why the outcome of the 797 Investigation will have an effect on this case.  It is undisputed that none of the patents-in-suit share a common specification, prosecution history, or parent/child relationship with any patents at issue in the 797 Investigation.  Nor is there any particular technical relationship between the patents-in-suit here and those in the ITC.  HTC barely even tries to establish one, asserting vaguely that "many of the patents" in both cases "relate to various aspects of the graphical user interface of portable electronic devices with touch screens."  (D.I. 130 at 5.)  Although HTC never explains what these "various aspects" are, the reality is that the specific technologies at issue here have little to do with those in the ITC case.  The patents at issue here relate, respectively, to online application stores, location-aware computing, device unlocking, phone call management, spelling correction, and popup notification windows.  (D.I. 27, Exs. J-O.)  The patents at issue in the ITC, in contrast, relate to list scrolling, multitouch gesture recognition, accelerometers, and touchscreen hardware.  (Ex. 18 at 8-12.)  These technologies simply do not overlap in any meaningful way.

HTC's claim that certain patents-in-suit share PTO classifications with patents in the 797 Investigation proves nothing.  (D.I. 130 at 6.)  PTO classifications are broad, general categories that can and do include many thousands of often loosely-related patents.  (Ex. 19.)  For instance, classification 345/173, on which HTC relies heavily for its supposed "overlap," includes patents on "Fingerprint Representation Using Localized Texture Features," (U.S. Patent No. 8,180,121), an "Operating Device on a Steering Wheel," (U.S. Patent No. 8,155,837), a "Portable Dialysis

Machine," (U.S. Patent No. 7,918,993), an "Ink Editing Architecture," (U.S. Patent No. 8,072,433), a "Toothed Slider," (U.S. Patent No. 7,876,309), and a "Projector and Method for Acquiring Coordinate of Bright Spot" (U.S. Patent No. 8,079,714).[3] Mere membership in this kind of broad category cannot be enough to support a stay.

Perhaps recognizing that it cannot prove any significant overlap between the patents-in-suit and the 797 Investigation, HTC attempts to lump the ITC case in with three separate district court actions that it collectively calls the "Stayed Actions." (D.I. 130 at 1.) HTC appears to argue that because (it says) some of the patents in the present case share common inventors and technologies with some patents in the stayed 167 and 544 cases, and *other, different* patents in the 167 and 544 cases have a similar overlap with the 797 ITC investigation, this case should be stayed. HTC's theory treats its stay request like a virus, jumping from one patent to the next through a chain of fleeting associations.

HTC's communicable-disease theory of stays is not supported by any of the meager authority it cites. Both *SanDisk Corp.*, 538 F. Supp.2d 1060, and *FormFactor Inc. v. Micronics Japan Co.*, *Ltd.,* 2008 U.S. Dist. LEXIS 13114 (N.D. Cal. Feb. 11, 2008), involved direct overlap between the case to be stayed and the patents at issue in the co-pending ITC case. HTC has not cited – and Apple cannot locate – any case in which a court has issued a stay based on the type of indirect overlap HTC cites here.

---

[3] The other PTO classifications identified by HTC are similarly unhelpful. Classification 715/863 includes patents on a "Stabilized Laser Pointer" (U.S. Patent No. 7,380,722), a "Quantum Photonic Imager," (U.S. Patent No. 8,049,231), and a "Controlling a Robot Using Pose" (U.S. Patent No. 7,664,571). Classification 715/781 includes a "Device for Aircraft Dialogue," (U.S. Patent No. 8,140,992), a "Parking Assist System," (U.S. Patent No. 6,898,495), and an "Industrial Plant Asset Management System" (U.S. Patent No. 6,421,571).

Even if HTC's indirect-overlap theory were viable, it is wrong as a matter of fact.  Aside from its vague allusions to "graphical user interfaces" and PTO classifications, the best HTC can do is identify a single patent in this case (the '721 patent) that shares a specification with a single patent in the 167 case (the '849 patent).  HTC's argument ignores the facts that this patent is one out of over twenty-five in what HTC calls the "Stayed Actions," and that neither the '849 nor the '721 patent is even asserted in the 797 Investigation.[4]  Moreover, despite HTC's fixation on "graphical user interfaces," the vast majority of patents in the so-called "Stayed Actions" have nothing to do with graphical user interfaces, but cover different technologies such as interference cancellation for cellular antennae, register designs for digital cameras, operating systems, proximity sensors, power-saving modes for digital processors, and plug-and-play video devices.  (Exs. 20, 21.)  Indeed, even the handful of patents HTC bothers to discuss in its motion do not satisfy its broad "graphical user interface" criteria: one (the '129 patent) covers the physical construction of a touchscreen and another (the '915 patent) is a software patent that deals with distinguishing data representing single- and multi-finger touches.  (Ex 18 at 8-9, 11.)

> **2.     Staying This Case Is Inefficient Because It Would Require a Logjam of Five Patent Cases and Over 30 Patents To Be Litigated At Once Upon Expiration of the Stay And Would Frustrate The Parties' Ability to Reach a Timely Resolution of Their Dispute.**

HTC's efficiency argument is also wrong because it ignores the impact of the stay on the Court's broader docket.  Tellingly, HTC never mentions what awaits when the last appeal from the 797 Investigation ends and all the stays expire.  If HTC has its way, at that point, no less than five separate patent cases – this case, the 166 case, the 167 case, the 544 case, and the 611 case –

---

[4] If any remedy for this "overlap" is appropriate, efficiency would be far better served by unstaying the '849 patent and moving it into this case, thereby removing it from the logjam that awaits when the appeals from the 797 Investigation conclude.

including at least thirty-two asserted patents will be unstayed simultaneously.  (D.I. 27, Exs. 20-23.)  The logistical complexities of litigating thirty-two patents at once – to say nothing of the needless burden on the Court's docket – hardly qualifies as "efficient."

In contrast, litigating these patents now presents multiple opportunities for efficiencies, and for easing the burden on this Court's docket.  First, the same patents are being litigated in a separate action that is proceeding against Motorola in Florida right now, and the accused functionalities are largely identical.  For instance, with respect to the '050 and '332 patents, the accused functionalities include specific Android applications: Maps, Play Store, and Android Market.  (*See* D.I. 27 at ¶¶ 234, 246; D.I. 93 at Exs. 10, 11.)  These applications are distributed by Google to HTC and Motorola as completed software, and HTC and Motorola include them as-is on accused devices.  (D.I. 93 at Exs 10, 11.)  The other four patents in suit are asserted against, among other things, the same Android software that both HTC and Motorola receive from Google.  (D.I. 27 at ¶¶ 216, 222, 228, 240.)  If this case is not stayed, the Court could transfer the case back to Florida for all proceedings through *Markman*, eliminating the need for two Courts to conduct claim construction and discovery proceedings.  Or, the Court could order that depositions of Apple and third-party (e.g., Google) witnesses could be coordinated between the cases so they need only occur once, to minimize the burden on witnesses.

Allowing at least some claims to proceed now is also efficient because it would improve the chances for a timely resolution of these matters, rather than simply pretending, as HTC wishes, that these cases do not exist.  If this case moves forward, the parties will receive guidance from the Court, in the form of a *Markman* order or final judgment, about the strength of their positions, which in turn may well help the parties to resolve all the matters.  This could allow the Court to avoid having to adjudicate the presently-stayed cases at all.  HTC's tactic of

artificially stalling the litigations means that the parties will receive no guidance until the stay expires and that the Court would be virtually guaranteed to have to adjudicate all of the parties' claims at that time.  This is hardly a model of efficiency.

Similarly, denying HTC's motion and proceeding with the case could also permit the Court and the parties to develop a streamlined approach covering all of the cases pending before the Court, perhaps at a status conference where the parties could receive the Court's guidance regarding its preferred way to proceed.  Given this opportunity, Apple would be willing to make specific suggestions to streamline its overall assertions against HTC if it were allowed to proceed on a subset of its patents now, a path that would be more efficient both for the parties and for the Court's docket.   Apple respectfully submits that HTC's universal-stay approach is the *least* efficient alternative for managing the cases before the Court, and should therefore be rejected.

## C. HTC's Argument That the Case Is in its Early Stages Should be Given No Weight Because HTC Has Refused to Adhere to the Case Schedule or to Respond to Discovery.

Although HTC makes much of the fact that "[d]iscovery has not significantly advanced," that should be given little weight because the failure of discovery to "advance[]" is of HTC's own making.  (D.I. 130 at 10.)   Prior to transfer, Judge Scola ordered the parties to adhere to a procedural schedule, under which infringement contentions were due on September 7.  (Ex. 3.) Discovery was open and the parties were expected to respond to discovery requests promptly.

Transfer did not change this.  When a case is transferred, "all discovery in progress and all orders of the transferor court remain in effect after transfer unless and until they are modified by the transferee judge."  17-112 Moore's Federal Practice – Civil § 111.06.  Judge Scola's order transferring the case to this Court did not vacate the procedural schedule; HTC was therefore not excused from complying with it.  (D.I. 116.)   Nonetheless, upon arrival in this District, HTC essentially granted itself the stay it is now requesting from the Court.   HTC's responses to

Apple's first set of document requests – which requested basic information about the accused products – were due on August 16.  HTC has not produced any documents in response to these requests.  Likewise, in compliance with Judge Scola's order, Apple served its infringement contentions on September 7.  HTC refused to do so and still has not provided its contentions.[5]

HTC should not be rewarded for taking this Court's prerogatives into its own hands, ignoring the existing schedule, and granting itself a moratorium on its discovery obligations.  Thus, the third stay factor should be deemed neutral.

### D.    HTC's Proposed Stay is Inconsistent With the Case Management Approaches Taken By Other District Courts Confronted With Similarly Complex Matters.

Finally, HTC's insistence that "efficiency" requires that this case be stayed is flatly inconsistent with the outcomes of other matters involving co-pending ITC and district court proceedings in the same technical arena.  For instance, both Motorola and Samsung sell Android-based smartphones that infringe many of the patents Apple has asserted against HTC.  Apple's efforts to protect its intellectual property have, over the past two years, involved the prosecution of simultaneous district court and ITC proceedings against these two companies.  The courts handling those cases have taken a diametrically opposite case management approach to the one urged by HTC: rather than impose a global stay, they not only allowed the cases to proceed, but followed schedules that have *already* brought them to conclusion.

Tellingly, they have done so in the face of at least as much overlap between the district court and ITC proceedings as HTC can muster here.  For instance, Apple sued Samsung in both

---

5 Apple has consistently stated to HTC its position that HTC is required to follow Judge Scola's May 14 order, and has asked HTC to provide authority for its position that it need not.  HTC has either been unable to, or has refused, to cite any decision by any court, or any other source, that supports its position.  Although Apple did meet and confer with HTC in an attempt to resolve the parties' disputes without Court intervention, the parties could not reach agreement.

the Northern District of California and the ITC (Inv. No. 337-TA-796).  (Exs. 24, 25.)  The

district court and ITC patents in suit there were, by HTC's metrics, at least as closely related as

the patents at issue here, sharing both inventors and PTO classifications:

| Inventor | Samsung ITC Patents | Samsung District Court Patents |
|---|---|---|
| Bas Ording | 7,479,949 | 7,469,381; 7,853,891 |
| Scott Herz | 7,479,949 | 7,844,915 |
| Imran Chaudhri | 7,479,949 | 7,853,891 |
| Scott Forstall, Greg Christie, Steven Lemay, Chris Blumenberg, Richard Williamson, Marcel van Os | 7,479,949 | 7,864,163 |
| PTO Classification | Samsung ITC Patents | Samsung District Court Patents |
| 345/173 | 7,479,949 | 7,844,915; 7,864,163 |
| 715/784 | 7,479,949 | 7,844,915 |

Yet, far from calling a halt to the case due to "inefficiency," Judge Koh ordered the parties to

proceed on a prompt schedule that brought the case to a jury verdict in under a year (in August

2012).  Similarly, in October 2010, Motorola filed suit against Apple in several fora.  In

response, Apple both filed district court claims in Wisconsin and initiated an ITC investigation

(Inv. No. 337-TA-750) against Motorola.  (Exs. 26, 27.)  The patents in question shared

significant overlap – for instance, one of the patents asserted in the 750 ITC investigation (U.S.

5,379,430) related to low-level operating system services, as did many of the patents in the

Motorola Wisconsin case, such as U.S. 5,481,721 and 5,519,867.  (Id.)  Judge Crabb, and later

Judge Posner, who presided over the case, set a schedule that had the case ready for trial in a year-and-a-half, by June 2012.

The Motorola and Samsung cases illustrate that – contrary to HTC's argument – there is nothing necessarily inefficient in proceeding with simultaneous ITC and district court actions between the same litigants, even if there were some high level technical overlap.  Moreover, those cases underscore the value of prompt resolution of federal court claims in vindicating the parties' rights.  Apple's $1 billion jury verdict against Samsung stands as an unshakeable testament to both the importance of Apple's claims against its Android competitors, and the power of an efficient district court trial to resolve such claims.  Apple respectfully submits that the Court should deny HTC's motion and – like the courts handling the Motorola and Samsung cases – set a schedule and allow Apple's claims to be heard promptly.

## VI.      CONCLUSION

HTC's stay request should be denied because it will impose a sweeping, effectively nationwide bar on Apple's ability to access the federal courts to redress ongoing and pervasive infringement by its direct competitor.  This legally unsupported result is prejudicial, inefficient, and inconsistent with the procedures followed in other courts.  HTC's motion should be denied.


Dated: October 1, 2012                    By:      */s/ Richard K. Herrmann*
                                                   Richard K. Herrmann (I.D. #405)
                                                   Mary B. Matterer (I.D. #2696)
                                                   MORRIS JAMES LLP
                                                   500 Delaware Avenue, Suite 1500
                                                   Wilmington, DE 19801-1494
                                                   (302) 888-6800
                                                   rherrmann@morrisjames.com
                                                   mmatterer@morrisjames.com

OF COUNSEL

Michael T. Pieja
Christopher Lubeck
Lawrence Lien
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
(650) 804-7800
mpieja@bridgesmav.com
clubeck@bridgesmav.com
llien@bridgesmav.com

Aaron Taggart
BRIDGES & MAVRAKAKIS LLP
180 N LaSalle, Suite 2215
Chicago, IL 60601
(312) 216-1620
ataggart@bridgesmav.com

*Attorneys for Apple Inc.*