IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC.,<br><br>        Plaintiff,<br><br>     v.<br><br>HTC CORPORATION, HTC AMERICA, INC., ONE & COMPANY DESIGN, INC., and HTC AMERICA INNOVATION, INC.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No. 12-1004-GMS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**THE HTC DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO STAY PROCEEDINGS**

                                          John W. Shaw (No. 3362)
                                          Karen E. Keller (No. 4489)
                                          David M. Fry (No. 5486)
                                          SHAW KELLER LLP
                                          300 Delaware Avenue, Suite 1120
                                          Wilmington, DE 19801
                                          (302) 298-0700
                                          jshaw@shawkeller.com
                                          kkeller@shawkeller.com
                                          dfry@shawkeller.com
                                          *Attorneys for Defendants*

OF COUNSEL:
Leo L. Lam
Brian L. Ferrall
Rebekah L. Punak
Simona A. Agnolucci
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
(415) 391-5400

Dated: October 12, 2012

## **TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | THIS COURT ALREADY HAS CONCLUDED THAT SIMILAR PATENT ASSERTIONS BY APPLE WERE SUFFICIENTLY RELATED TO WARRANT A STAY. | 2 |
| II. | A STAY DOES NOT UNDULY IMPINGE UPON APPLE'S ALLEGED PATENT RIGHTS. | 3 |
|  | A. If Successful, Apple's Pending ITC Proceedings Against HTC Would Provide Immediate, Injunctive Relief As To Many Of The Accused Products. | 3 |
|  | B. Apple Does Not Have Unfettered Rights To Bring Related Cases Against The Same Party And Products In Different Forums. | 4 |
| III. | THERE IS NO INCONSISTENCY IN GRANTING A STAY HERE WHILE ALLOWING AN UNRELATED HTC ACTION TO PROCEED, PARTICULARLY BECAUSE APPLE *NEVER SOUGHT A STAY* IN THAT ACTION. | 7 |
| IV. | HOW OTHER JUDGES MANAGE UNRELATED ACTIONS BY APPLE AGAINST MOTOROLA AND SAMSUNG IN OTHER COURTS IS IRRELEVANT TO THE COURT'S DECISION REGARDING A STAY IN THIS CASE. | 8 |
| V. | APPLE'S ALTERNATIVE PROPOSALS FOR LITIGATING THIS CASE ARE ATTEMPTS TO REVISIT THIS COURT'S PRIOR RULING. | 9 |

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Apple v. HTC, et al.*
No. 10-CV-00167 (D. Del. March 2, 2010) ................................................................. 2, 8

*Apple v. Samsung*
No. 2012-1507 (Fed. Cir. October 11, 2012) .................................................................. 8

*Flexsys Americas, LP, v. Kumho Tire, U.S.A., Inc.*
No. 5:05-CV-156, 2005 WL 1126750 (N.D. Ohio April 29, 2005) .................................. 6

*FormFactor, Inc. v. Micronics Japan Co., Ltd.*
CV-06-7159 JSW, 2008 WL 361128 (N.D. Cal. Feb. 11, 2008) .............................. 3, 4, 6

*HTC Corp. v. Apple, Inc.*
Case No. 1:11-cv-00785-GMS ........................................................................................ 7

*HumanscaleCorp v. Compx Int'l, Inc.*
No. 3:09CV86, 2009 Dist. LEXIS 43267 (E.D. Va. May 21, 2009) ................................ 6

*Landis v. North Am. Co.*
299 U.S. 248 (1936) ......................................................................................................... 5

*LG Elec., Inc. v. Eastman Kodak Co.*
No. 09-CV-0344H (BLM) 2009 U.S. Dist. LEXIS 44056 (S.D. Cal. May 26, 2009) ...... 6

*Polymer Technologies, Inc. v. Bridwell*
103 F.3d 970 (Fed. Cir. 1996) ......................................................................................... 4

*Robert Bosch LLC v. Pylon Mfg. Co.*
659 F.3d 1142 (Fed. Cir. 2011) ....................................................................................... 4

*SanDisk Corp. v. Phison Electronics Corp.*
538 F. Supp. 2d 1060 (W.D. Wis. 2008) ...................................................................... 4, 6

## INTRODUCTION

This Court already has concluded that judicial economy and conservation of resources favor staying other Apple actions targeting many of the same products and technologies at issue in this case, and including a patent from the same patent family. HTC moves to stay the present case. Because the same efficiency considerations favor staying the present case, HTC's motion should be granted.

Contrary to its assertions, Apple will not be deprived of the right to protect its intellectual property if this Court stays this case. If successful, Apple's pending ITC case against HTC will provide it injunctive relief against products accused here. Apple chose to prioritize the ITC for asserting patents against HTC and should not be heard to complain if related court actions are stayed pending resolution of its ITC investigation. Moreover, Apple did not seek a preliminary injunction during the year and a half before this Court stayed the related district court case to that ITC action, or at any time during Apple's Florida litigation against Motorola to which Apple simply appended the present case.

Apple does not have unfettered rights to proceed as it wishes, in different forums at different times, on related claims variously targeting the same HTC products. Nor does the schedule that Judge Scola issued in Florida—premised on a consolidated Motorola-Apple-HTC case, and before he severed and transferred the case against HTC here—give Apple the entitlement that it wishes it had.

Ultimately, Apple cannot dispute the overlap between the present case, the other actions stayed by this Court, and the ongoing ITC investigation. In the interest of judicial economy, the present case should be stayed along with the other stayed actions pending resolution of the ongoing ITC investigation.

## ARGUMENT

I.  **THIS COURT ALREADY HAS CONCLUDED THAT SIMILAR PATENT ASSERTIONS BY APPLE WERE SUFFICIENTLY RELATED TO WARRANT A STAY.**

Over the past two and a half years, Apple has asserted 32 patents against the same HTC smartphones in this Court alone, and 15 additional patents against HTC in the ITC. HTC's Opening Brief (D.I. 130) ("Opening Br.") at 3. This Court found that there was "sufficient overlap" in the subject matter of these patents, and that "the interests of judicial economy and preservation of party resources" would be best served by staying the Delaware actions ("the Stayed Actions") pending resolution of the ITC Investigation. Punak Decl. In Support of Motion to Stay (D.I. 131) ("Punak Decl."), Ex. A, (Case No. 10-CV-00167, 12/16/11 Order at 6 & n. 16) ("the 167 Action"). Unhappy with this Court's stay, Apple decided to try to attack the same HTC smartphones elsewhere. Apple thus appended HTC to other ongoing litigation that Apple had against Motorola in Florida, asserting infringement "counterclaims" based on six additional patents against HTC and targeting largely the same accused HTC products as those at issue in the Delaware actions. Opening Br. at 4-5. Recognizing Apple's belated case against HTC in Florida to be the afterthought that it was, Judge Scola severed it from the Apple-Motorola litigation and in the interest of judicial efficiency transferred it to this Court, where "resources can be streamlined." Decl. of Simona Agnolucci In Support of Reply Memo In Support of Mot. to Stay ("Agnolucci Decl."), Ex. A (D.I. 116, 7/31/12 Order at 11). Judge Scola further noted that this Court's December 16, 2011 stay order "makes transfer more appropriate, not less so, because [like the Delaware actions] the instant matter involving HTC is also at its infancy." *Id.*

Apple attempts to subvert this Court's stay order, as well as the Florida court's order applying this Court's rationale, by asserting an ill-defined "right" to proceed immediately in Delaware with related claims based on six additional patents, without regard to the interests of

2

the public in the efficient administration of justice. But Apple provides no explanation for why HTC's present stay motion should be treated differently from the previous stay motion, or why new facts or circumstances call for revisiting this Court's prior analysis. In truth, the same principles of efficiency continue to apply. *See infra*, p. 11.

## II. A STAY DOES NOT UNDULY IMPINGE UPON APPLE'S ALLEGED PATENT RIGHTS.

### A. If Successful, Apple's Pending ITC Proceedings Against HTC Would Provide Immediate, Injunctive Relief As To Many Of The Accused Products.

Apple's multiplicity of asserted claims provide it opportunities to obtain injunctive relief, should it prevail. Apple's ITC Investigation against HTC, if successful, would provide it with injunctive relief as to many of the allegedly infringing products at issue here. Moreover, Apple's argument that a stay would preclude it from obtaining injunctive relief on claims it chose not to assert in the ITC rings hollow. As the *FormFactor* court noted in rejecting the very argument made by Apple, "the fact that injunctive relief is not available [if the district court action is stayed] arises because of [the plaintiff's] own decision not to include the non-overlapping patents in the ITC Complaint." *FormFactor, Inc. v. Micronics Japan Co., Ltd.*, CV-06-7159 JSW, 2008 WL 361128 at *2 (N.D. Cal. Feb. 11, 2008). In any event, Apple has made clear that injunctive relief from the district courts is not a high priority. Before it was stayed, the 167 Action had been pending for almost two years, during which Apple never sought a preliminary injunction.[1]

---

[1] Nor has Apple sought a preliminary injunction against Motorola based on the same six patents in the Florida action, which has been pending for almost a year. Moreover, in one of the few cases in which Apple *has* sought a preliminary injunction, the district court denied the request, finding that because "Apple is not a 'small company'" and its market cap "exceeds that of Google and Microsoft combined[,] [t]o suggest that it has suffered loss of market share, brand recognition, or customer goodwill as a result of Motorola's alleged infringement of the patent claims still in play in this case is wild conjecture." *See* Agnolucci Decl. Ex. B (D.I. 1038, Case No. 1:11-cv-08540, at 30); *see also id.* at 31 ("Apple is complaining that Motorola's phones *as a whole* ripped off the iPhone *as a whole*. But Motorola's desire to sell products that compete with

3

Having chosen the ITC as its lead forum, Apple has also made clear that recovering money damages is not its priority, and Apple cannot now protest that related court cases are stayed pending the resolution of the ITC litigation.[2] In the context of discretionary stays, courts have found that plaintiffs are *not* unduly prejudiced by waiting for money damages. *See SanDisk Corp. v. Phison Electronics Corp.*, 538 F. Supp. 2d 1060 (W.D. Wis. 2008) ("To ask a large corporation such as plaintiff to wait for money damages, even as long as 18 months, so that the dozens of international defendants and the court can address complex, multi-patent litigation once instead of twice is hardly 'immoderate.'"); *FormFactor*, 2008 WL 361128 at *2 ("potential monetary damages are not sufficient harm to warrant not staying this proceeding ... [and] could potentially be recovered after the conclusion of the ITC proceeding and this proceeding") (internal quotations omitted).

**B.     Apple Does Not Have Unfettered Rights To Bring Related Cases Against The Same Party And Products In Different Forums.**

The Court should reject Apple's protest that if this case is stayed, it will be barred from courthouses nationwide. If Apple truly had a different case to present, that would be another story. But this case is a transparent attempt by Apple to pile on more of the same, and Apple is *not* entitled to simply assert related claims against identical accused products wherever and whenever Apple chooses. Indeed, Apple's overlapping onslaughts are precisely the type of inefficient litigation that discretionary stays are intended to remedy. As this Court already

---

the iPhone is a separate harm—and a perfectly legal one—from any harm caused by patent infringement.") (emphasis in original).
[2] Apple cites inapposite cases for the proposition that the alleged prejudice resulting from the temporary inability to recover money damages militates against a stay. *Robert Bosch LLC v. Pylon Mfg. Co.*, 659 F.3d 1142, 1150-51 (Fed. Cir. 2011) and *Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) involved motions for preliminary injunctions and did not arise in the procedural context present here.

determined in its stay order, trying cases involving all of the patents asserted in Delaware together, or at a minimum coordinating discovery among them, would conserve significant party and court resources. *See* Punak Decl., Ex. A.

Apple does not (because it cannot) contest that eight of the twelve named inventors on the six patents at issue are also named inventors in the Stayed Actions, and two of them are also named inventors in the ITC proceedings. Opening Br. at 7 & n.11. Nor does Apple contest that the same HTC employees likely have knowledge about the design, sales and marketing of the accused products in both sets of litigation. And Apple does not dispute that if this case is stayed along with the Stayed Actions, the parties can coordinate document collection and production to save significant time and cost. Moreover, Apple does not respond meaningfully to the proposition that a stay will best serve judicial economy by minimizing the number of times the Court has to consider litigated issues, the most obvious examples being claim construction over similar or related terms, overlapping technical subject matter, discovery disputes, and damages issues.

Instead, Apple characterizes HTC's stay request as a "virus" that jumps from one patent to the next, arguing that only the overlap between this action and the 797 ITC Investigation is relevant to the question of whether this case should be stayed, while ignoring the overlap with all of the Stayed Actions. *See* Opposition (D.I. 137) ("Opp.") at 12 (asserting without support that "stays are limited to cases in which a district court case involves a patent in the same family ... as an ITC patent"). But the Court is not constrained as Apple says. "The power to stay proceedings is incidental to the power inherent in every court to control disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Congress intended for a court to have broad discretion

in applying this doctrine in any patent case with parallel ITC proceedings "to stay ***any other claims*** in the action before it." *See* Punak Decl., Ex. A, at 6, *quoting* H.R. Rep. No. 103-826(I), at 141, *as reprinted in* 1994 U.S.C.C.A.N. 3773 at 3913 (emphasis added). Apple cites no authority limiting this doctrine as Apple describes. Nor would such a limitation make sense—the benefits to be gained by coordinating this action and the Stayed Actions apply equally regardless of whether the patents asserted in the ITC Investigation No. 337-TA-779 ("the 797 ITC Investigation") share a family relationship with the six patents asserted here.

Apple also argues that, even if the patents at issue in all of the Stayed Actions (and not just the 797 ITC Investigation) are relevant to determining the appropriateness of a stay, there is no sufficient "overlap" between those patents and the patents at issue here. Asserting that a stay is improper because only one patent in this case shares a common specification with a patent in the Stayed Actions, Apple purports to impose rigid categorical limitations on the Court's broad inherent authority to manage its docket in a manner that conserves resources for both the Court and the parties. But no case relied on by Apple applies such an inflexible standard.[3] *See FormFactor,* 2008 WL 361128 at *2 (staying action involving non-overlapping patents because of "potential overlapping discovery," including inventor depositions); *SanDisk,* 538 F. Supp. 2d at 1068 (granting stay because "cases are likely to overlap substantially in discovery"); *Flexsys Americas, LP, v. Kumho Tire, U.S.A., Inc.*, No. 5:05-CV-156, 2005 WL 1126750 *4 (N.D. Ohio April 29, 2005).

---

[3] Apple cites *HumanscaleCorp v. Compx Int'l, Inc.*, No. 3:09CV86, 2009 Dist. LEXIS 43267 (E.D. Va. May 21, 2009), in which the patents involved different inventors than those in the ITC, and in which the court determined that "staying all claims will not avoid duplicative discovery and factual determinations" (*id.* at *3). Apple also cites *LG Elec., Inc. v. Eastman Kodak Co.*, No. 09-CV-0344H (BLM) 2009 U.S. Dist. LEXIS 44056 (S.D. Cal. May 26, 2009), in which the patents at issue in the district court and ITC did not have overlapping inventors or prosecuting attorneys or firms.

6

The efficiencies of a stay apply with full force here. Indeed, Apple itself touts these same efficiencies when it suits Apple. Apple has favored litigating all patent claims between two parties in one forum where the accused products merely "fall into the general category of computing devices, with most of the accused products representing mobile communications and mobile computing devices," just as is the case here. *See* Agnolucci Decl., Ex. C (D.I. 37, Case No. 1:10-cv-23580-RNS, at 6) (arguing that requiring two courts to "invest significant resources studying the same products and same general technology" is "an unnecessarily inefficient result").

III. **THERE IS NO INCONSISTENCY IN GRANTING A STAY HERE WHILE ALLOWING AN UNRELATED HTC ACTION TO PROCEED, PARTICULARLY BECAUSE APPLE *NEVER SOUGHT A STAY* IN THAT ACTION.**

Apple complains it is unfair to allow HTC's unrelated 785 (the "785 Action")[4] action against Apple to proceed before this Court while two HTC cases against the iPhone and iPad proceed in the ITC. Opp. at 9.[5] But Apple never sought a stay in the 785 Action pending those ITC investigations. Apple has not alleged that efficiencies would be gained by staying the 785 Action, or that the 785 Action and the ITC investigations Apple cites are related. Even if they were related, Apple's decision not to seek a stay was its own and should in no way confine the Court's decision on HTC's stay motion here.

Apple also complains that this Court denied it leave to file counterclaims in the 785 Action, asserting that it and HTC are being treated asymmetrically. Opp. at 10. The question this Court decided in Apple's motion to amend—whether the patents Apple sought to assert in its

---

[4] Agnolucci Decl., Ex. D (Case No. 1:11-cv-00785-GMS, 5/22/12 Order at 4 & n.8).
[5] The 721 and 724 Investigations referred to by Apple already have concluded. Agnolucci Decl., Ex. E. Certain issues decided in the 724 Investigation currently are on appeal to the Federal Circuit. Agnolucci Decl., Exs. F & J.

7

counterclaims were sufficiently related to HTC patent claims such that it made sense to try them before the same jury—is not the question presented by this motion to stay. Moreover, Apple's request to add counterclaims would have complicated, and not streamlined, the 785 Action. There, the Court found that allowing Apple to assert entirely unrelated patents would increase the number of depositions and the volume of discovery and "would not promote the interests of judicial economy." (the 785 Action at 4, D.I. 33).

IV.   **HOW OTHER JUDGES MANAGE UNRELATED ACTIONS BY APPLE AGAINST MOTOROLA AND SAMSUNG IN OTHER COURTS IS IRRELEVANT TO THE COURT'S DECISION REGARDING A STAY IN THIS CASE.**

In the past, Apple has vigorously resisted efforts to transfer cases out of this forum, emphasizing "the efficiencies that will result from one court overseeing and coordinating" its many actions against HTC. Agnolucci Decl. Ex. G (*Delaware III*, D.I. 14, at 1); *see also id.* at Ex. H (*Delaware I*, D.I. 9; *Delaware II*, D.I. 9). Indeed, Apple has praised this Court for its "expertise in managing large complex patent infringement cases." Agnolucci Decl. Ex. G (*Delaware III*, D.I. 14, at 9). But ever since this Court's stay order, Apple has turned to other venues, and in an about-face now accuses **HTC** of treating this Court as a "dumping ground for Apple's offensive cases." Opp. at 2.

Apple compares this case to its cases against Samsung and Motorola, noting that other courts allowed those cases to proceed along schedules that already have brought them to conclusion notwithstanding parallel ITC investigations. Opp. at 18. Apple's actions against Motorola and Samsung are different cases, involving different products and parties, governed by different local rules and standing orders, and presenting different scheduling issues. The way other judges manage unrelated litigation is irrelevant to the appropriateness of a stay in this

8

case.[6] Moreover, the parties to those actions never sought a stay pending resolution of related ITC investigations. Accordingly, Apple's attempts to impose on this Court advice from others should be disregarded.

## V. APPLE'S ALTERNATIVE PROPOSALS FOR LITIGATING THIS CASE ARE ATTEMPTS TO REVISIT THIS COURT'S PRIOR RULING.

Apple's counterclaims against HTC in Florida were an afterthought, added nearly a year and a half into ongoing litigation with Motorola. As discussed *supra*, p. 1, the Florida court agreed that efficiency strongly favors coordinating Apple's related claims against HTC's smartphones and trying those claims in Delaware. Apparently dissatisfied that it could not find a way to avoid this Court's stay order and pursue its claims in Florida, Apple incredibly now asks this Court to "transfer this case back to Florida for all proceedings through *Markman*," (Opp. at 16.), which is perhaps the most inefficient means of conducting pre-trial proceedings in this case.[7] Coordinating discovery relating to the patents asserted here with an unwieldy set of assertions and counter-assertions between Apple and Motorola, most of which are not asserted

---

[6] Ironically, Judge Koh in *Apple v. Samsung* may have preferred not to deal with that case, chastising the parties for failing to sufficiently narrow the issues and claims and saying it was "cruel and unusual punishment to a jury" to have to sort through the maze of assertions presented there. Agnolucci Decl. Ex. I, (D.I. 915, at 4). Furthermore, even there, Apple's initial success at the district court seeking post-trial injunctive relief against Samsung has been overturned by the Federal Circuit. *Apple v. Samsung,* No. 2012-1507 (Fed. Cir. October 11, 2012). This latest Federal Circuit decision raises even more serious doubts as to whether Apple has any real prospect for injunctive relief, even if the case were not stayed.

[7] Apple devotes an entire section of its brief to arguing that Judge Scola's previous order consolidating the litigation among Apple, Motorola and HTC—*before* he severed and transferred Apple's case against HTC here—set forth a consolidated schedule that somehow governs this case. Opp. at 17-18. The consolidated Florida schedule was mooted by Judge Scola's severance and transfer decision, and in any event does not track this Court's Form Scheduling Order or the Delaware Default Standard. Apple's assertion that HTC has "grant[ed] itself a moratorium on its discovery obligations" is without merit. HTC has informed counsel for Apple that, pending the Court's Rule 16 order and without prejudice to its motion to stay, HTC intends to proceed with discovery in good faith. Agnolucci Decl. ¶ 12.

9

against HTC and have no relation to its business, hardly furthers judicial economy and conservation of party resources.

Apple complains about the prospect of having to litigate over 30 patents simultaneously, but that would be a mess of Apple's own making. Nobody forced Apple to assert over 30 patents in two years against the same HTC products, often targeting the same functionality in the accused smartphones. Apple should not now be heard to complain about the difficulties associated with litigating this morass of patent assertions. It is unclear—and Apple makes no attempt to elucidate—what efficiency advantages are to be gained by litigating these patents *in seriatim* and in different forums.

Apple alludes to a "streamlined approach" that ***could*** be developed if the six patents asserted in this action are litigated now, but Apple's vague promise that it later "would be willing to make specific suggestions to streamline its overall assertions against HTC" (Opp. at 17) highlights the very benefit of granting a stay here. If, as Apple asserts, it would be "more efficient for the parties and for the Court's docket" to allow Apple to litigate some of its patents first, then it is hard to imagine how staying this action, allowing the ITC investigation to proceed, and streamlining all of Apple's patent assertions later will not yield even greater efficiencies.[8]

## CONCLUSION

For the foregoing reasons, HTC respectfully requests that this Court stay this action pending final resolution of ITC Investigation No. 337-TA-797 and enter an Order in the form attached to HTC's Motion to Stay, Docket No. 129.

---

[8] The ITC investigation has been proceeding apace, and the Administrative Law Judge is expected to issue his final determination in approximately three weeks. The target date for the completion of the investigation is March 7, 2013. Punak Decl., Ex. B.

10

|  |  |
|---|---|
|  | /s/ John W. Shaw |
|  | John W. Shaw (No. 3362)<br>Karen E. Keller (No. 4489)<br>David M. Fry (No. 5486)<br>SHAW KELLER LLP<br>300 Delaware Avenue, Suite 1120<br>Wilmington, DE 19801<br>(302) 298-0700<br>jshaw@shawkeller.com<br>kkeller@shawkeller.com<br>dfry@shawkeller.com |
| OF COUNSEL:<br>Leo L. Lam<br>Brian L. Ferrall<br>Rebekah L. Punak<br>Simona A. Agnolucci<br>KEKER & VAN NEST LLP<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>(415) 391-5400 | *Attorneys for Defendants* |

Dated: October 12, 2012

11